IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

Willie Marvin Williams,

Petitioner,

v.

Warden J. Nance,

Respondent.

C/A No. 9:25-cv-12987-SAL-MHC

**RESPONSE IN OPPOSITION TO RESPONDENT'S**

**MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Petitioner Willie Marvin Williams respectfully submits this Response in Opposition to Respondent's Motion for Summary Judgment.

Respondent's thirty-six-page memorandum rests on a basic misconception of federal habeas review: it treats the South Carolina Court of Appeals' unpublished per curiam opinion as the last word on Petitioner's claims, and then uses that opinion to justify its own reweighing of the evidence, rather than applying the governing standards under 28 U.S.C. § 2254(d).

The question before this Court is not whether the state courts reached a plausible result, or whether this Court might have weighed the evidence differently in the first instance.

Under § 2254(d)(1) and (2), the question is whether the state court decision rested on an unreasonable application of clearly established Supreme Court precedent, or on an unreasonable determination of the facts in light of the evidence presented.

On this record, the answer is yes on both counts as to the mutual-combat/self-defense instruction (Grounds One and Eight),

1.

and Ground Nine satisfies Martinez v. Ryan's gateway to excuse procedural default.

Most importantly, Respondent cannot avoid the critical fact that the PCR court—after a full evidentiary hearing—granted relief on the mutual-combat ineffective-assistance claim.

Judge Stillwell heard trial counsel Warder and Jones, reviewed the trial transcript and the instructions as given, made credibility determinations, found both deficient performance and prejudice, and ordered relief.

The Court of Appeals reversed on prejudice alone, without disturbing the deficient-performance finding, and did so by effectively conducting a sufficiency-of-the-evidence/harmless-error review instead of applying Strickland's "reasonable probability" standard.

That is precisely the kind of unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984), that § 2254(d)(1) does not tolerate, and it precludes summary judgment.

## II. SUMMARY JUDGMENT AND § 2254(d)

Respondent invokes Rule 56 but does not acknowledge how it operates in a § 2254 case. Summary judgment is appropriate only when, viewing the record in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In habeas, this standard overlays § 2254(d):

Respondent must show that, based on the state-court record, no reasonable jurist could conclude that the state court unreasonably applied clearly established federal law or unreasonably determined the facts. Section 2254(d)(1) asks whether the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."

Under Harrington v. Richter, 562 U.S. 86, 101 (2011), deference applies only where the state court's decision has a reasonable

2.

basis; when the court's reasoning is incompatible with controlling precedent or applies the wrong legal standard, § 2254(d) does not shield it.

Williams v. Taylor, 529 U.S. 362, 412 (2000), explains that an "unreasonable application" occurs when a state court correctly identifies the governing principle but unreasonably applies it to the facts of the case.

Section 2254(d)(2) further provides that relief is warranted where the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

That standard is directly implicated where, as here, a PCR judge who heard live testimony and made credibility findings grants relief, and an appellate court reverses on a cold record without acknowledging—let alone deferring to—those factual determinations.

At this stage, this Court must view the state-court record, including the PCR court's order granting relief, in the light most favorable to Petitioner.

When the evidence is so viewed, and when § 2254(d)'s legal and factual components are applied correctly, genuine disputes of material fact and law preclude summary judgment on multiple grounds.

### III. GROUNDS ONE & EIGHT: MUTUAL COMBAT INSTRUCTION AND STRICKLAND

Grounds One and Eight present a single core claim: trial counsel rendered ineffective assistance by failing to object when the trial court injected a mutual-combat instruction into the first element of self-defense despite the absence of supporting evidence.

Respondent correctly notes that these grounds overlap; Petitioner agrees. But Respondent's analysis misapplies § 2254(d)(1) and (2) at every step.

3.

A. The PCR Court Granted Relief

The proper starting point is the PCR court's order. Judge Stillwell held a full evidentiary hearing on December 18, 2019, heard testimony from trial counsel Warder and Jones, reviewed the trial transcript, and considered the charge as actually given.

He found that (1) no evidence of mutual combat was presented at trial; (2) the mutual-combat instruction was therefore unsupported; (3) trial counsel's failure to object constituted deficient performance; and (4) Petitioner was prejudiced. He granted relief on this claim. (PCR App. 899-921.)

The Court of Appeals reversed on prejudice only and left the deficient-performance finding intact. It held that "there is no reasonable probability the result of the trial would have been different had trial counsel objected to the trial court's mutual combat charge given the evidence presented." Williams v. State, 2025-UP-077 (S.C. Ct. App. filed Mar. 5, 2025).

The central question under § 2254(d)(1) is whether that prejudice determination was a reasonable application of Strickland. It was not.

B. The Court of Appeals Applied the Wrong Prejudice Standard

The Court of Appeals' prejudice analysis failed in two independent ways.

First, the court effectively conducted a sufficiency-of-the-evidence/harmless-error review instead of a Strickland prejudice analysis.

It recited evidence of guilt—the order of protection, the 911 call, Wilson's testimony, the son's testimony, Petitioner's flight, and his self-harm—and then concluded that the evidence was so strong that no reasonable probability of a different result existed.

That is not the Strickland inquiry. Strickland defines prejudice as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," and clarifies that a "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." 466 U.S. at 693-94.

4.

The Supreme Court has made clear that the strength of the State's case does not itself foreclose a finding of prejudice. Wiggins v. Smith, 539 U.S. 510, 537-38 (2003) (explaining that "reasonable probability" is less than "more likely than not").

By asking whether the evidence was so overwhelming that the outcome could not have changed, the Court of Appeals applied a functional harmless-error standard that Strickland does not allow. See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). Second—and more fundamentally—the Court of Appeals never analyzed how the erroneous mutual-combat instruction reshaped the jury's deliberations.

It assumed a correct legal framework and then asked whether the jury would have convicted anyway. But the mutual-combat instruction was embedded in the first element of self-defense; before the jurors could consider whether Petitioner reasonably feared death or serious bodily harm, they were told to determine whether he "voluntarily participated in mutual combat."

If they found mutual combat—even though no trial evidence supported such a finding—self-defense was cut off at the threshold.

Jury instructions are not advisory; they define the analytical space in which the jury operates. See Sullivan v. Louisiana, 508 U.S. 275, 281 (1994).

When the trial court misinstructs on the first element of the only viable defense, the "verdict space" is distorted from the outset.

The reasonable probability that even a single juror would have evaluated self-defense differently without that unsupported barrier is precisely the kind of probability that Strickland protects.

The Court of Appeals' failure to engage this structural effect is an unreasonable application of Strickland within the meaning of § 2254(d)(1).

C. The Appellate Rejection of the PCR Court's Factual Findings Was Unreasonable

Section 2254(d)(2) applies as well. The PCR court, having seen and heard trial counsel, found both deficient performance and prejudice.

5.

The Court of Appeals, on a paper record, reversed those factual findings on prejudice without any explanation of why the PCR court's detailed assessment was clearly erroneous.

It did not identify misread testimony, overlooked evidence, or implausible credibility determinations; it simply substituted its own assessment of the likelihood of a different outcome.

When a PCR court and an appellate court reach directly conflicting conclusions about prejudice on the same record, Richters own formulation-that habeas relief is barred unless "fair-minded jurist could disagree"-is satisfied in Petitioner's favor 563 U.S. at 101.

The fact that a state judge who heard the witnesses granted relief shows that reasonable jurists do disagree about prejudice.

At a minimum, that conflict creates a genuine issue of material fact that precludes summary judgment on Grounds One and Eight.

## IV  GROUND TWO: DUE PROCESS AND EXCLUSION OF CRITICAL DEFENSE EVIDENCE

Respondent characterizes Ground Two as a non-cognizable challenge to a state evidentiary ruling.

That framing is incorrect. The exclusion of the victim's contemporaneous threat-made while he held a gun on Petitioner in a case in which self-defense was the core theory-implicates the Due Process Clause.

In Chambers v Mississippi, 410 U.S 284 (1973), the Supreme Court held that state evidentiary rules must yield when their rigid application deprives a defendant of a fair opportunity to present a defense Id at 236-37.

Here, the victim's statement that ~~she~~ he was threatening Petitioner was not collateral. it formed the factual foundation of Petitioner s claim that he reasonably feared imminent lethal harm.

Without that statement, the jury could not fully evaluate the reasonableness of his fear, which is central to any self-defense claim

6.

The Court of Appeals affirmed the exclusion on hearsay grounds and did not address the federal constitutional question.

But federal courts are not bound by a state court's decision to label an issue "purely state law" when the effect of the ruling is to deny a fair trial. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (federal inquiry is whether an evidentiary ruling "so infected the entire trial as to deny due process").

Where the exclusion of evidence falls within Chambers' rule, the claim is cognizable in habeas regardless of the state label.

## V. GROUND THREE: IAC—INVOLUNTARY MANSLAUGHTER INSTRUCTION

Ground Three challenges trial counsel's failure to preserve an involuntary manslaughter instruction.

Respondent and the state courts treated Petitioner's testimony as if it described only a single scenario: that "the gun discharged in Wilson's hand when Applicant performed his self-defense move."

But Petitioner also testified that he and Wilson were "struggling" and "wrestling," that they "continued to fight as they moved through the house," and that "the gun was fired three times" during that struggle. (PCR App. 10.)

These accounts are not identical, and the latter version supplies the factual predicate for involuntary manslaughter: an unintentional killing occurring during a physical struggle without an intent to kill.

The PCR court's failure to consider or credit this testimony, or to view it in the light most favorable to Petitioner, is a factual determination subject to § 2254(d)(2).

At the summary judgment stage, this Court must assume the version of events most favorable to Petitioner when assessing whether the evidence supported a lesser-included instruction. Moreover, Beck v. Alabama, 447 U.S. 625 (1980), requires that a jury be instructed on lesser-included offenses when the evidence would permit a rational juror to convict on the lesser rather than the greater offense.

Where both the defense and the State's theory acknowledge a physical struggle in which the gun discharged multiple times, the failure to charge involuntary manslaughter is not merely a state-law question; it raises an independent due process concern and underscores the prejudice from counsel's failure to preserve the issue.

## VI. GROUND FOUR: IAC—TRANSFERRED SELF-DEFENSE

Respondent argues, and the PCR court agreed, that counsel's failure to seek a transferred self-defense instruction was reasonable because the South Carolina Supreme Court had not yet formally endorsed the doctrine.

That reasoning conflates the absence of a definitive state-law ruling with the absence of a constitutional duty to pursue viable defenses.

Porter did not hold that transferred self-defense was invalid; it declined to resolve the issue.

In a case where the evidence showed that Petitioner acted in self-defense against one person (Wilson) and that the victim was killed during that same defensive act, a competent attorney had every reason to request a transferred self-defense charge so that the jury could consider that theory.

The Sixth Amendment requires counsel to ensure that all plausible defense theories supported by the evidence are placed before the jury. See Wiggins, 539 U.S. at 521.

The fact that state law had not yet clearly adopted the doctrine does not excuse counsel's failure to request the instruction or preserve the issue.

At a minimum, fair-minded jurists could disagree about whether counsel's performance was deficient and whether there is a reasonable probability that a properly instructed jury would have viewed the fatal shot differently.

That disagreement precludes summary judgment on Ground Four.

## VII. GROUND FIVE: IAC—SPECIFIC INTENT AND ATTEMPTED MURDER

On Ground Five, Respondent notes that State v. King, 422 S.C. 47 (2017), post-dated Petitioner's trial and that the PCR court relied on that timing to find no deficient performance concerning specific-intent instructions for attempted murder.

Even if this Court accepts that deficient performance was not clearly established before King, the prejudice analysis cannot assume that the instruction given was lawful simply because the law was unsettled at the time.

King later clarified that specific intent to kill is an element of attempted murder.

If the trial court's charge allowed the jury to convict without finding that Petitioner specifically intended to kill Wilson—as opposed to merely intending to shoot, or acting recklessly—then the jury may have convicted on a legally incorrect standard.

Strickland prejudice must be assessed against the correct legal standard; it does not disappear because the trial court's error was understandable at the time.

Given the chaotic circumstances of the shooting and the fact that Wilson survived, there is at least a reasonable probability that a jury correctly instructed on specific intent to kill would have reached a different verdict on the attempted murder charge.

The state courts' failure to analyze prejudice under the correct standard constitutes an unreasonable application of Strickland.

## VIII. GROUND SIX: IAC—SOLICITOR'S CLOSING ARGUMENT

During closing argument, the solicitor urged the jury: "On behalf of Greenville County, please find him guilty."

This was not a neutral statement of venue. It was a direct appeal for a guilty verdict "on behalf of" the community—a classic "send a message" argument.

The PCR court distinguished State v. Hamilton, 344 S.C. 344 (2001), on the ground that the solicitor here did not make derogatory remarks about Petitioner or explicitly vouch for the State's case.

9.

But Hamilton's holding is broader: it condemns argument that invite jurors to convict based on their role as community representatives rather than on the evidence. Id. at 362, 543 S.E.2d at 596.

The solicitor's request here did exactly that.

When closing arguments urge conviction as a civic duty rather than as the product of reasoned assessment of the evidence, they raise due process concerns under Darden v. Wainwright, 477 U.S. 168 (1986), which holds that prosecutorial misconduct in closing can render a trial fundamentally unfair.

Counsel's failure to object to such a remark deprived Petitioner of an opportunity to have that error cured or preserved. At a minimum, reasonable jurists could disagree about whether this omission was constitutionally significant, precluding summary judgement.

### GROUND SEVEN: IAC-PROVOCATION INSTRUCTION (VOLUNTARY MANSLAUGHTER)

Respondent asserts that the law of transferred intent in the voluntary manslaughter context was unsettled, citing Wharton and Childers, and concludes that counsel reasonably chose not to object to the provocation instruction.

That argument conflates two separate questions: (1) whether transferred intent applies to voluntary manslaughter, and (2) whether the instruction as given accurately described provocation on these facts.

The trial court instructed that provocation "must come from some act of or related to the victim," effectively excluding Wilson's conduct-approaching Petitioner with a gun, pointing it at him, and confronting him outside the victim's home-from the jury's consideration of voluntary manslaughter.

Regardless of any transferred-intent theory, Wilson's actions were an obvious source of provocation.

By telling the jury that provocation "must come from" the victim, the court affirmatively misinstructed on settled element of voluntary manslaughter and removed the most significant provocation from the jury's purview.

10.

Counsel had a duty to object to an instruction that distorted the jury's analytical framework on the only meaningful partial-defense theory available.

The state courts' failure to recognize this distinction between unsettled transferred-intent doctrine and the clear misstatement of provocation law was both an unreasonable factual determination and an unreasonable application of Strickland.

## X. GROUND NINE: MARTINEZ v. RYAN AND THE 911 TAPE

Respondent's response to Ground Nine relies entirely on procedural default, arguing that the ineffective-assistance claim regarding the replay of the 911 tape during deliberations is barred because PCR counsel did not raise it.

Respondent does not meaningfully address Martinez v. Ryan, 566 U.S. 1 (2012).

Martinez creates a narrow but critical exception: in states like South Carolina, where ineffective-assistance-of-trial-counsel claims must be brought in collateral review, ineffective assistance by PCR counsel can establish cause to excuse a defaulted trial-counsel IAC claim if the underlying claim is "substantial." Id. at 9, 16.

All three Martinez requirements are satisfied here.

First, South Carolina law requires IAC claims to be raised in PCR proceedings, not on direct appeal. See S.C. Code Ann. § 17-27-20.

Second, PCR counsel filed a multi-ground application raising several IAC claims but omitted the 911-tape issue, even though it was entirely record-based: the trial transcript reflects that, during deliberations, the jury requested and received the 911 recording, and no objection was made.

No extra-record investigation was necessary. PCR counsel's failure to raise this obvious, record-grounded claim constitutes deficient performance.

Third, the underlying IAC claim is "substantial" within Martinez's meaning—that is, it has "some merit." 566 U.S. at 16. The 911 recording captured Kerns reporting that Petitioner was

11.

at her door, stating that she had a gun, and then going silent after a loud noise.

It was an emotionally powerful piece of evidence. Allowing the jury to replay it privately in the jury room, without any contemporaneous objection or limiting instruction, heightened its emotional impact and removed judicial oversight of how it was used.

The jury's request for the tape during deliberations confirms that it mattered to their decision-making

A claim that competent counsel would have objected to the jury's unsupervised replay of such an incendiary recording has, at minimum, some merit considering the fact that the tape incorrectly offers that Petitioner had a restraining order against him.

Respondent's reliance on Shinn v. Ramirez, 596 U.S. 366 (2022), is misplaced. Shinn restricts federal courts from holding evidentiary hearings to develop new facts in support of defaulted claims, even under Martinez.

It does not bar Martinez where, as here, the entire claim is based on the existing trial record; no new evidence is needed to adjudicate the defaulted IAC issue.

Finally, Respondent again invokes the "overwhelming evidence" formulation to deny prejudice, but Martinez does not require a showing that Petitioner would necessarily prevail on the underlying IAC claim-only that the claim is substantial

Given the nature of the 911 recording and its use during deliberations, the underlying claim easily clears the low threshold, and the default excused

## XI. CUMULATIVE ERROR

Even if this Court were to conclude that no single error by itself satisfies § 2254(d), it must consider the cumulative effect of all constitutional errors

Multiple errors, each individually insufficient to warrant relief, can together deprive a defendant a fair trial See Brecht, 507 U S at 637.

Here, the errors are systemic, not isolated. The mutual-combat instruction improperly narrowed self-defense at the threshold.

The provocation charge instructed the jury to ignore the principal provocation in the case.

The lack of a transferred self-defense instruction prevented the jury from considering the most coherent explanation of how the victim was shot while Petitioner defended himself against someone else.

The exclusion of the victim's threat statement stripped away the evidentiary basis for self-defense.

The solicitor's closing urged the jury to convict "on behalf of" the community.

And the 911 tape was replayed during deliberations, without objection or supervision, amplifying its emotional impact at the most critical moment.

Viewed together, these errors distorted the legal framework, skewed the evidentiary presentation, and exerted powerful emotional pressure on the jury.

That combination is more than sufficient to "undermine confidence in the outcome" and to render the trial fundamentally unfair in violation of due process.

## XII. CONCLUSION

Respondent has not carried the heavy burden of showing that summary judgment is warranted under § 2254(d).

On the strongest ground, the mutual-combat/self-defense instruction, a PCR judge who heard the witnesses and reviewed the record granted relief, and the Court of Appeals reversed only by applying a prejudice standard that conflicts with Strickland and disregards the structural impact of the erroneous instruction.

On Ground Nine, Martinez v. Ryan provides a record-based gateway to reach a substantial defaulted IAC claim regarding the 911 tape replay, which Respondent does not meaningfully confront.

On the remaining grounds, the state court's analyses contain both legal and factual errors sufficient to create genuine disputes of material fact precluding summary judgment.

At a minimum, Petitioner has shown that fair-minded jurist could disagree about the resolution of his claims. See Slack v. McDaniel, 529 U.S. 473, 484 (2000); Richter, 562 U.S. at 101.

For all of these reasons, the Court should deny Respondent's Motion for Summary Judgment and set this matter for further proceedings on the merits, including an evidentiary hearing to the extent necessary to resolve any remaining factual disputes.

Respectfully Submitted,

/s/ *Willie M. Williams*

Willie Marvin Williams, #167044
Petitioner, Pro se

14.