UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Willie Marvin Williams,<br><br>Petitioner,<br><br>v.<br><br>Jonathan Nance, Warden,<br><br>Respondent. | ) | C/A No. 9:25-cv-12987-SAL-MHC<br><br>**REPORT AND RECOMMENDATION** |

Petitioner Willie Marvin Williams ("Petitioner"), a state prisoner proceeding pro se, seeks habeas relief pursuant to 28 U.S.C. § 2254. ECF No. 15 (Amended Petition).

This matter is before the Court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 17, 18. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Court advised Petitioner of the Motion, dismissal procedures, and the possible consequences if he failed to respond adequately to Respondent's Motion. ECF No. 19. Petitioner filed a Response in Opposition, ECF No. 24.

Also before the Court is a Motion for Summary Judgment filed by Petitioner. ECF No. 27. Respondent filed a Response in Opposition, ECF No. 28, and Petitioner filed a Reply, ECF No. 29. The Motions for Summary Judgment are ripe for review.

Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Petitioner's Motion for Summary Judgment, ECF No. 27, be denied; that Respondent's Motion for Summary Judgment, ECF No. 18, be granted; and that the Amended Petition, ECF No. 15, be dismissed with prejudice.

## BACKGROUND

The procedural history as described by Respondent has not been disputed by Petitioner and is set forth as follows. Petitioner currently is in the custody of the South Carolina Department of Corrections.

### I. State Criminal Case

In April 2013, a Marion County grand jury indicted Petitioner for murder, possession of a weapon during the commission of a violent crime, attempted murder, and unlawful conduct towards a child. ECF No. 17-2 at 183–88.

Petitioner proceeded to a jury trial from May 13–14, 2013, before the Honorable Deadra L. Jefferson. ECF No. 17-1 at 4. Attorneys Richard H. Warder and W. Townes Jones, IV, represented Petitioner at trial, and Assistant Solicitor Judith M. Munson represented the State. *Id.*

At the conclusion of the trial, the jury found Petitioner guilty as charged on all offenses. ECF No. 17-2 at 163–65. The trial court sentenced Petitioner to life imprisonment for murder, thirty years' imprisonment for attempted murder, and ten years' imprisonment for unlawful conduct towards a child. *Id.* at 180–81, 189–92. The trial court also imposed a sentence of five years' imprisonment, suspended to time served, on the charge of possession of a weapon during the commission of a violent crime. *Id.*

On behalf of Petitioner, Appellate Defender David Alexander filed a timely appeal challenging only the murder conviction, raising the following issues:

> 1. In a case where both voluntary manslaughter and self-defense were charged to the jury, did the trial court err by excluding as hearsay a threat made by the alleged victim while holding a gun on the appellant?
>
> 2. Did the trial court err by failing to charge voluntary manslaughter because appellant testified that the gun went off during a struggle with one of the alleged victims?

ECF No. 17-2 at 193–212.

In an unpublished per curiam opinion, the South Carolina Court of Appeals affirmed, holding that (1) the trial court did not err in excluding the Victim's boyfriend's alleged statement as hearsay and (2) the issue of the trial court refusing to charge the jury on voluntary manslaughter was unpreserved for appellate review. ECF No. 17-2 at 270–71 (*State v. Williams*, 2016-UP-215 (S.C. Ct. App. filed May 18, 2016)). Petitioner did not seek further direct review, and the Remittitur was issued on June 3, 2016. ECF No. 17-3.

**II. Post-Conviction Relief Action**

Petitioner filed a pro se application for post-conviction relief ("PCR") on December 28, 2016, alleging the following grounds:

1. Due process and constitutional violations
2. "Fraud upon the Court" and constitutional violations
3. Trial court lacked jurisdiction
4. Brady violation and due process constitutional violations

ECF No. 17-2 at 272–78.

On October 5, 2017, the State filed its Return and Partial Motion to Dismiss and Motion for a More Definite Statement. ECF No. 17-2 at 289–96. On May 10, 2019, a second PCR application (2019-CP 23-2687) was filed on behalf of Petitioner through counsel, alleging the following:

> (a) Trial counsel was ineffective in failing to preserve for appellate review the failure to charge involuntary manslaughter.
>
> (b) Trial counsel was ineffective in failing to object to the jury charge concerning transferred intent.
>
> (c) Trial counsel was ineffective in failing to object to the jury charge as to mutual combat when no evidence was presented to support such a charge.
>
> (d) Trial counsel was ineffective when he failed to object to the charge specific intent is not required in an attempted murder case.

ECF No. 17-2 at 280–88.

The State filed a Motion for Merger of the two cases. ECF No. 17-2 at 306–08. On September 4, 2019, the Honorable Letitia H. Verdin issued an order merging the two cases, with the 2016 PCR being the surviving case, and the second application filed on May 10, 2019 to be treated as an amendment. ECF No. 17-2 at 309–10. Finally, an Amended Application for Post-Conviction Relief was filed by counsel for Petitioner on August 9, 2019, alleging the following:

> (a) Trial counsel was ineffective in failing to preserve for appellate review the failure to charge involuntary manslaughter.
>
> (b) Trial counsel was ineffective in failing to object to the jury charge concerning the provocation for voluntary manslaughter must come to the victim.
>
> (c) Trial counsel was ineffective in failing to object to the jury charge as to mutual combat when no evidence was presented to support such a charge.
>
> (d) Trial counsel was ineffective when he failed to object to the charge specific intent is not required in an attempted murder case.
>
> (e) Trial counsel failed to object to an improper closing argument given by the state.
>
> (f) Trial counsel failed to object to the failure of the trial judge to give a charge on criminal intent as it relates to the murder charge or voluntary manslaughter.
>
> (g) Trial counsel failed to request a charge as to transferred intent as it relates to self defense.

ECF No. 17-2 at 297–305.

On December 18, 2019, an evidentiary hearing was convened before the Honorable Robin B. Stilwell (the "PCR Court"). ECF No. 17-2 at 311–99. Attorney C. Rauch Wise ("PCR Counsel") represented Petitioner, and attorney Taylor Z. Smith represented the State. *Id.* PCR Counsel advised that Petitioner would present evidence based on the allegations of the amended application filed in August 2019, recited directly above. *Id.* at 315–16. At the hearing, Petitioner testified on his own behalf, and Respondent called Petitioner's trial attorneys as witnesses. *Id.* at 311–99.

By order dated March 31, 2020, and filed April 2, 2020, the PCR Court granted Petitioner's application as to the claim that trial counsel were constitutionally ineffective for failing to object to the jury instruction on mutual combat when no evidence was presented at trial that would have supported that instruction. ECF No. 17-2 at 400–24. The PCR Court denied and dismissed with prejudice all other claims made by Petitioner. ECF No. 17-2 at 400–24.

The State filed a Motion to Alter or Amend Judgment on April 17, 2020, pursuant to Rule 59(e), SCRCP. ECF No. 17-2 at 425–34. The motion was denied on May 7, 2020. *Id.* at 435. Thereafter, both the State and Petitioner filed notices of appeal. *Id.* at 436–40. On November 18, 2020, the State (Petitioner-Respondent) filed a Petition for Writ of Certiorari in the South Carolina Supreme Court presenting the following questions:

> I. Did the PCR court err in finding [Petitioner's] defense attorneys were constitutionally ineffective for not objecting to the trial court's jury instruction on mutual combat when the PCR court's finding that [Petitioner] suffered prejudice was erroneously based on the assumption that [Petitioner] was entitled to a self-defense instruction and when the PCR court's findings as to this issue contradict its other findings?
>
> II. Did the PCR court err in not restricting its grant of post-conviction relief to the murder conviction only when that is the offense tried that could have been affected by the mutual combat instruction, and, in the alternative, from refusing to clarify which convictions the grant of relief was meant to apply?

ECF No. 17-4 at 3.

On January 22, 2021, counsel for Petitioner (Respondent-Petitioner) filed a Petition for Writ of Certiorari in which she presented the following issues on Petitioner's behalf:

> 1. Did the PCR judge err in refusing to find trial counsel ineffective for failing to request a jury instruction on transferred intent as it relates to self-defense when the judge instructed the jury on the law of self defense and evidence was presented that while Petitioner was acting in self-defense during a struggle over a gun with one person, another person, Petitioner's wife, was fatally shot?
>
> 2. Did the PCR judge err in refusing to find trial counsel ineffective for failing to preserve for appellate review the trial judge's failure to instruct the jury with the law of involuntary manslaughter?

> 3. Did the PCR judge err in refusing to find trial counsel ineffective for failing to object when the judge instructed the jury that a specific intent to kill is not an element of attempted murder?
>
> 4. Did the PCR judge err in refusing to find trial counsel ineffective for failing to object when in closing argument the prosecutor told the jury, "On behalf of the people of Greenville County, please find him guilty."?
>
> 5. Did the PCR judge err in refusing to find trial counsel ineffective for not objecting to the judge's instruction to the jury that the provocation needed for voluntary manslaughter must come from some act of or related to the victim, precluding a defense theory of transferred intent as to voluntary manslaughter?

ECF No. 17-5 at 3.

On February 3, 2021, counsel for Petitioner filed a return to the State's petition. ECF No. 17-7. On June 7, 2021, the State filed a return to Petitioner's petition. ECF No. 17-6. On June 29, 2021, the South Carolina Supreme Court issued an order transferring the appeal to the Court of Appeals pursuant to Rule 243(l), SCACR.[1] ECF No. 17-8. On November 14, 2023, the Court of Appeals issued an order granting the State's petition for writ of certiorari and denying Petitioner's petition. ECF No. 17-9.

The State filed its Brief of Petitioner on March 28, 2024. ECF No. 17-10. Petitioner's Brief of Respondent was filed by Kathrine Hudgins, Appellate Defender, on April 29, 2024. ECF No. 17-11. In an unpublished opinion issued March 5, 2025, the Court of Appeals reversed the decision of the PCR Court, holding as follows:

> We hold the PCR court erred by finding that trial counsel's deficient performance prejudiced [Petitioner]. . . . Given the evidence presented during the trial, we hold there is no reasonable probability the outcome of the trial would have been different had the trial court not given the mutual combat charge.

---

[1] Pursuant to South Carolina Appellate Court Rule 243(l), "The Supreme Court may transfer a case filed under this rule to the Court of Appeals." If transferred, the Court of Appeals shall proceed with the case in the same manner as the Supreme Court would have done, with the exception that a petition for writ of certiorari may be granted by one judge of a three-judge panel. Rule 243(l), SCACR.

ECF No. 17-12 at 6–7 (*Williams v. State*, 2025-UP-077 (S.C. Ct. App. filed Mar. 5, 2025)). Because the Court reversed the grant of PCR relief, it declined to rule on the State's other issue. *Id.* at 7.

On March 14, 2025, Petitioner filed a Petition for Rehearing. ECF No. 17-13. The State filed its return on March 31, 2025. ECF No. 17-14. In an order filed April 14, 2025, the South Carolina Court of Appeals denied the petition. ECF No. 17-15.

On May 14, 2025, Petitioner filed a Petition for Writ of Certiorari with the South Carolina Supreme Court. ECF No. 17-16. The question presented to the Supreme Court on behalf of Petitioner was "[w]hether the Court of Appeals erred in reversing the PCR court's grant of relief by finding no prejudice resulting from trial counsel's failure to object to the unwarranted mutual combat charge that prevented the jury from considering both self-defense and accident." *Id.* at 4. On June 13, 2025, the State filed its return to this second petition for writ of certiorari. ECF No. 17-17. On June 17, 2025, counsel for Petitioner filed a Reply to Return to Petition for Writ of Certiorari. ECF No. 17-18. On September 9, 2025, the South Carolina Supreme Court issued an order denying the petition. ECF No. 17-19. The Remittitur was issued on September 10, 2025. ECF No. 17-20.

On or about October 8, 2025, Petitioner sought federal habeas relief by signing his Petition and giving it to prison officials for mailing. ECF No. 1; *see Houston v. Lack*, 487 U.S. 266 (1988) (stating that a prisoner's pleading is filed at the moment of delivery to prison authorities for forwarding to the district court). With leave of the Court, Petitioner filed an Amended Petition on December 4, 2025. ECF No. 15.

## STANDARDS OF REVIEW

### I. Summary Judgment Standard

Summary judgment is appropriate if a party "shows there is no genuine dispute as to any issue of material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under the framework established in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Id*. at 323. Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id*. at 324.

Under this standard, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Id.* at 252. Likewise, conclusory or speculative allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. To survive summary judgment, the non-movant must provide evidence of every element essential to his action on which he will bear the burden of proving at a trial on the merits. *Celotex Corp.*, 477 U.S. at 322.

Additionally, pro se filings are to be "liberally construed" and a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). However, the requirement of liberal construction does not mean the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. *See United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate.").

## II. Federal Habeas Review under 28 U.S.C. § 2254

Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Therefore, in considering Petitioner's claims, the Court's review is limited by the deferential standard of review set forth in 28 U.S.C. § 2254(d). *See Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998). Under § 2254(d),

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

28 U.S.C. § 2254(d); *see also Evans v. Smith*, 220 F.3d 306, 312 (4th Cir. 2000) (explaining federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law," or "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding"). A state court's decision is contrary to clearly established federal law if that court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Evans*, 220 F.3d at 312 (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). A state court decision unreasonably applies clearly established federal law if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. (quoting *Williams*, 529 U.S. at 413).

Because "review under § 2254(d)(1) focuses on what a state court knew and did," this Court measures the reasonableness of the state court's decision based on the information in the record before the state court. *Valentino v. Clarke*, 972 F.3d 560, 575 (4th Cir. 2020) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011)). "Likewise, § 2254(d)(2) provides for a limited review of factual determinations in light of the evidence presented in the State court proceeding[;] [thus,] [t]his backward-looking language similarly requires an examination of the state-court decision at the time it was made." *Id*. (citation and internal quotation marks omitted).

Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 410. Further, factual findings "made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. Procedural Bar

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural default/bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before a petitioner has appropriately exhausted available state-court remedies or after a petitioner has otherwise defaulted/bypassed seeking relief in the state courts will be dismissed absent unusual circumstances, as detailed below.

### A. Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies. *See* 28 U.S.C. § 2254(b)–(c). The statute requires that, before seeking habeas corpus relief, a petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). Stated plainly, in the interest of giving state courts the first opportunity to consider alleged constitutional errors in state proceedings, a § 2254 petitioner is required to "exhaust" all state remedies before a federal district court can entertain his claims. Thus, a federal habeas court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-

27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will generally result in the application of a procedural bar by the South Carolina Supreme Court. *See Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009) (discussing procedural bar and noting the "general rule" in South Carolina is that where a party fails to file a Rule 59(e) motion, the argument is forfeited).

Furthermore, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts. A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45. In South Carolina, a claim is not procedurally barred from review in this Court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the Court of Appeals. *See In re Exhaustion of State Remedies in Criminal & Post–Conviction Relief Cases*, 321 S.C. 563, 564, 471 S.E.2d 454 (S.C. 1990) ("[W]hen the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies.").

**B. Procedural Default/Bypass**

When a federal habeas petitioner has failed to raise a claim at the appropriate time in state court and has no further means of bringing that issue before the state courts, the claim will be considered procedurally defaulted, and he will be procedurally barred from raising the issue in his federal habeas petition. *Smith v. Murray*, 477 U.S. 527, 533 (1986). This situation is sometimes referred to as procedural bypass, as the petitioner has "bypassed" his state remedies. In other words, procedural default/bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Procedural default/bypass can occur at any level of the state proceedings, if the state has procedural rules that bar its courts from considering claims not

raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See, e.g.*, *Evans v. State*, 611 S.E.2d 510, 515 (S.C. 2005) (noting an "issue or argument which is neither raised at PCR hearing nor ruled upon by the PCR court is procedurally barred from appellate review" (citation omitted)). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984). If a federal habeas petitioner has procedurally defaulted his opportunity for relief in the state courts, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *overruled on other grounds by United States v. Barnette,* 644 F.3d 192 (4th Cir. 2011); *Coleman v. Thompson,* 501 U.S. 722, 735 n.1 (1991). Thus, where the state court has not had the opportunity to apply its own procedural bar, the federal court will nevertheless bar the claim where application of the bar is clear. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989).

### C. Cause and Actual Prejudice

Notwithstanding the foregoing, a federal court may consider claims that have not been presented to the highest South Carolina court with jurisdiction in very limited circumstances. *See Granberry v. Greer*, 481 U.S. 129, 131 (1987). Indeed, because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the state's courts

in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or by "prov[ing] that failure to consider the claims will result in a fundamental miscarriage of justice." *Lawrence v. Branker*, 517 F.3d 700, 714 (4th Cir. 2008).

A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Murray v. Carrier*, 477 U.S. 478, 488–97 (1986). Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Id.* at 496.

## DISCUSSION

Petitioner raises the following grounds for relief in his Amended Petition:

**Ground One**: "The South Carolina Court of Appeals erred in reversing the PCR Court's grant of relief by finding no prejudice resulting from trial counsel's failure to object to the unwarranted mutual combat charge that prevented the jury from considering both self-defense and accident and the State's evidence was not overwhelming."

**Ground Two**: "The South Carolina Court of Appeals erred in finding Appellant was not prejudiced by trial court [sic] excluding as hearsay a threat made by the alleged victim while holding a gun on the Appellant."

**Ground Three**: "Did the PCR judge erred [sic] in refusing to find trial counsel's ineffective [sic] for failing to preserve for appellate review the trial judge's failure to instruct the jury with the law of involuntary manslaughter."

**Ground Four**: "Did the PCR judge erred [sic] in refusing to find trial counsel's ineffective [sic] for failing to request a jury instruction on transferred intent as it relates to self-defense when the judge instructed the jury on the law of self-defense and evidence was presented that while Petitioner was acting in self-defense during a struggle over a gun with one person, another person, Petitioner's wife, was fatally shot."

**Ground Five**: "The PCR judge erred in refusing to find trial counsel ineffective for failing to object when the judge instructed the jury that a specific intent to kill is not an element of attempted murder."

**Ground Six**: "The PCR judge erred in refusing to find trial counsel ineffective for failing to object when in closing argument the prosecutor told the jury, 'On behalf of the people of Greenville County, please find him guilty.'"

**Ground Seven**: "The PCR judge erred in refusing to find trial counsel's ineffective [sic] for not objecting to the judge's instruction to the jury that the provocation needed for voluntary manslaughter must come from some act of or related to the victim, precluding a defense theory of transferred intent as to voluntary manslaughter."

**Ground Eight**: "Trial counselor's [sic] was constitutional ineffective [sic] for failing to object to the trial court's erroneous jury instruction on self-defense."

**Ground Nine**: "Trial counselor's [sic] was constitutional ineffective [sic] for failing to object to the jury listening to the 911 tape during deliberations in the jury room."

ECF No. 15 at 5–13.

In the Return and Memorandum of Law in support of Respondent's Motion, Respondent notes that Petitioner exhausted his state remedies and that the Petition was timely filed under 28 U.S.C. § 2244(d)(1). ECF No. 17 at 13–14, 18 n.4. Respondent contends that Petitioner's Ground Nine is procedurally barred, while the first eight grounds have been fully and properly exhausted and are ripe for deferential review under 28 U.S.C. § 2254(d). *Id.* at 18–36. Finally, Respondent

argues that all of Petitioner's Grounds fail on the merits. *Id.*

In Petitioner's Motion for Summary Judgment, Petitioner argues that the record, viewed in the light most favorable to Petitioner, establishes that summary judgment should be entered in his favor. ECF No. 27 at 11–13. He contends that the South Carolina Court of Appeals unreasonably disregarded the PCR Court's factual findings and that it erred in finding overwhelming evidence of guilt. *Id.* at 14–18.

## I. GROUNDS ONE AND EIGHT

Ground One of the Amended Petition alleges that the "South Carolina Court of Appeals erred in reversing the PCR Court's grant of relief by finding no prejudice resulting from trial counsel's failure to object to the unwarranted mutual combat charge that prevented the jury from considering both self-defense and accident and the State's evidence was not overwhelming." ECF No. 15 at 5. Similarly, Ground Eight alleges that "Trial counselor's [sic] was constitutional ineffective [sic] for failing to object to the trial court's erroneous jury instruction on self-defense." *Id.* at 10. Respondent argues that Grounds One and Eight allege the same error and are duplicative, ECF No. 17 at 34, and Petitioner agrees. *See* ECF No. 24 at 3 ("Grounds One and Eight present a single core claim: trial counsel rendered ineffective assistance by failing to object when the trial court injected a mutual-combat instruction into the first element of self-defense despite the absence of supporting evidence.").

Respondent argues that Petitioner has failed to satisfy his burden under AEDPA review and that Grounds One and Eight are without merit. ECF No. 17 at 18–21. Upon review, the undersigned agrees with Respondent.

**A. The *Strickland* Test**

The Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the U.S. Supreme Court set forth a two-part test for courts to use to determine claims of ineffective assistance of counsel. A meritorious ineffective assistance of counsel claim must show two elements: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687–96.

As to the first prong, a court's evaluation of counsel's performance under this standard must be "highly deferential," so as not to "second-guess" the performance. *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted); *see also Bowie v. Branker*, 512 F.3d 112, 119 n.8 (4th Cir. 2008). To establish the second prong of *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." *Id.* "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster*, 563 U.S. at 189 (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)).

The review of ineffective assistance of counsel claims in federal habeas is not simply a new review of the merits; rather, habeas review is centered upon whether the state court decision was reasonable. *See* 28 U.S.C. § 2254(d). Additionally, each step in the review process requires deference—deference to counsel and deference to the state court that previously reviewed

counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105 (internal citations omitted). Thus, a "state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101.

The Supreme Court has explained that a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Thus, the question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Valentino*, 972 F.3d at 580 (citation and quotation marks omitted). Accordingly, "a federal court may grant relief only if *every* fairminded jurist would agree that *every* reasonable lawyer would have made a different decision." *Dunn v. Reeves*, 594 U.S. 731, 739–40 (2021) (citation and internal quotation marks omitted). Finally, "if a fairminded jurist could agree with either [the state court's] deficiency or prejudice holding, the reasonableness of the other is 'beside the point.'" *Shinn v. Kayer*, 592 U.S. 111, 120 (2020) (quoting *Wetzel v. Lambert*, 565 U.S. 520, 524 (2012)).

**B. The Court of Appeals' Decision Reversing the PCR Court**

The South Carolina Court of Appeals reversed the PCR Court's finding that Petitioner's trial counsel was ineffective for failing to object to the trial court's jury charge on mutual combat.

ECF No. 17-1. In so doing, the Court of Appeals set forth the following factual and procedural history:

> In April 2013, a Greenville County grand jury indicted Williams for murder, attempted murder, unlawful conduct towards a child, and possession of a weapon during the commission of a violent crime. Williams was accused of murdering his wife, Natasha Kerns, attempting to murder Kerns's boyfriend, Anthony Wilson, and unlawful conduct towards Kerns's son (Son).
>
> Kerns called 911 from her cell phone on July 10, 2010, at about 4:50 a.m. On the recording of the 911 call, Kerns told the operator that she believed someone was outside her home because she heard noises and her dogs barking. She stated she and Williams were divorcing and that an order of protection was in progress. She stated she had a pistol for her own protection. She then told the 911 operator that the person outside was Williams and that he was on her front porch. After a loud noise could be heard on the recording, Kerns stopped responding to the 911 operator.
>
> During the trial, Son [who was nine years old at the time of the incident and twelve years old at trial] testified that on the night of Kerns's death he knew something was wrong when he "heard the first fire." He testified that Wilson was in his room when this occurred. Son recalled that he saw Williams's Chrysler outside his window. Son testified he crawled into the hallway because he heard gunfire and saw Williams standing over Kerns's body shooting her. Son stated he saw Williams leave in his car.
>
> Wilson testified he met Kerns at a night club in Charlotte. He recalled that on July 9, 2010, he visited Kerns in Greenville and spent time with her, Son, and her daughter (Daughter). Wilson stated he woke up after going to sleep in Kerns's house because he heard the dog barking and "some ruckus going on around outside the house." He testified that Kerns got out of bed, grabbed a gun from the floor under her bed, and ran towards the front of the house. Wilson stated he took Daughter to Son's room. He remembered hearing Kerns saying "something about get away from my property, get away from my house, and stuff like that." Wilson stated he heard banging outside and Kerns talking before it went "straight silent." He testified he put Daughter on the bed with Son and then saw "a silhouette of a human being coming down the hallway." He stated the person he saw was a man he had never seen before. Wilson testified the man looked in Kerns's room, then walked down the hallway and shot into Son's room three times, hitting Wilson with the first shot. Wilson testified he was unconscious for an unknown amount of time and woke up to Son shaking him. He stated that when he left Son's room, he found Kerns dead by the window in the front room of the house and that before he could leave the house the police arrived.
>
> Cynthia Booker, who was Williams's girlfriend in July 2010, testified that she, her aunt, and Williams went to a club on the night of July 9, 2010. Booker stated that

Williams left her and her aunt at the club around 3:45 a.m. on July 10, 2010. She testified that Williams left in a hurry and she and her aunt had to find another ride home.

Williams testified he called Kerns around 4:15 or 4:30 a.m. on July 10, 2010, but she did not answer. He stated he then drove to Kerns's house, where he saw a vehicle that he did not recognize. Williams testified he attempted to open the storm door of the house but found it was locked. He testified he knocked on the front door of the house for three to five minutes but received no answer. He recalled that when he turned to walk away from the door he saw a curtain move, so he tried to "peep in through the window." Williams testified he then heard a noise behind him and turned to see a man, whom he identified as Wilson, approaching him with a gun pointed at him. He demonstrated how he acted in self-defense to the jury. He stated the gun went off while the men were struggling with each other. Williams testified that they continued "wrestling" and fell through the window into the home. He recalled the other man "got away from" him and may have lost the gun temporarily before retrieving it. Williams stated he and the man continued to fight as they moved through the house, during which the gun was fired three times and the man fell to the ground. He testified he did not see Daughter or Son in the bedrooms. He stated he then found Kerns in the front room with no pulse and he began to have an "anxiety attack." Williams testified he saw that Kerns had called 911, "flipped out," and left the home.

Williams testified he went home, paced around his yard, and then got back in the Chrysler. He stated that when he saw the Chrysler's gas light was on, he decided to drive his Chevrolet Tahoe instead. Williams recalled that he drove towards Laurens, stopped at the church where his mother was buried, and went to find Son and Daughter. Williams stated he stopped and spoke to a friend of his, Tracy Irby, and told him he had "messed up" because if he had not gone to Kerns's house he "wouldn't have got into the altercation and things." Williams testified he had decided to return to his house when he passed a Laurens County Sheriff's officer's car that began to follow him. He stated he continued to drive through Laurens with the officer following him and that the police had blocked various roads to stop him. Williams recalled that he had turned into a parking lot to avoid police when the officer's car hit the back of the Tahoe. He testified that he took a knife out of the Tahoe's glove compartment and stabbed himself in the chest because he was suicidal.

The parties stipulated that a properly administered and stored gunshot residue test was performed on Wilson and showed he had gunshot residue on his right palm, the back of his right hand, his left palm, and the back of his left hand. The parties further stipulated that a handprint found on a 1995 Lexus parked behind Kerns's home was identified as Wilson's handprint.

James William Armstrong, who worked in the forensics division crime laboratory for the Greenville County Department of Public Safety, testified that gunshot reside could get on a person's hands "from actual contact with an area that may have

gunshot residue on it, being in close proximity of a firearm when it's being fired, or even handling firearms." Armstrong also testified that the bullet from Kerns's autopsy, the bullet recovered from the wall of Son's room, and bullets taken by police from Williams's home in Laurens pursuant to a search warrant were all .38 caliber bullets.

The trial court charged the jury on self-defense and accident. The trial court also charged the jury on mutual combat, stating:

> If the Defendant voluntarily participated in mutual combat for purposes other than protection, the killing of the victim would not be self-defense. This is true if even during the combat the Defendant feared death or serious bodily injury. However, if before the killing is committed, the Defendant withdraws and tried in good faith to avoid further conflict and either by word or act makes the fact known to the victim, he would be without fault in bringing on the difficulty. For mutual combat, there must be a mutual intent and willingness to fight. This intent may be shown by the acts and conduct of the parties and the circumstances surrounding the combat. In addition, it must be shown that both parties were armed with a deadly weapon.

Trial counsel did not object to the trial court's instruction.

The jury found Williams guilty as indicted, and the trial court sentenced him to life imprisonment for murder, thirty years' imprisonment for attempted murder, and ten years imprisonment for unlawful conduct towards a child. The trial court also imposed a sentence of five years' imprisonment, suspended to time served, on the charge of possession of a weapon during the commission of a violent crime. Williams appealed and this court affirmed his convictions. *State v. Williams*, 2016-UP-215 (S.C. Ct. App. filed May 18, 2016). Williams filed an application for PCR on December 28, 2016. In his PCR application, Williams argued, among other things, that "trial counsel was ineffective in failing to object to the jury charge as to mutual combat when no evidence was presented in support of such a charge."

During the PCR hearing, Williams testified that Wilson's "bloody handprint" on the car behind Kerns's house was proof he went outside that night despite the fact that Wilson did not admit to going outside Kerns's house after her death. Williams stated that the inconsistencies in the trial transcript indicated that the State did not have a solid case due to factual disputes and therefore an error of law could have affected the outcome of the case. One of Williams's trial counsel testified he did not recall whether the trial court instructed the jury that mutual combat negated self-defense. Both trial counsel testified they were not familiar with *State v. Taylor*, [589 S.E.2d 1 (S.C. 2003),] in which our supreme court held that the trial court's mutual combat charge acted as a limitation on a defendant's ability to claim self-defense.

> The PCR court granted PCR, finding trial counsel was ineffective for failing to object to the jury charge on mutual combat. The PCR court found that the mutual combat charge negated the self-defense charge and therefore prejudiced Williams. The PCR court also found a reasonable criminal defense attorney should have been aware of the *Taylor* case and that even if they were not aware of *Taylor*, trial counsel should have objected to the mutual combat charge because the evidence did not support mutual combat.
>
> The PCR court's order stated "the conviction of Willie M. Williams is overturned and a new trial is granted." The State filed a Rule 59(e), SCRCP, motion, arguing the PCR court should clarify which of Williams's convictions were affected by the grant of PCR and that the grant of a new trial should be limited to his murder conviction. The State also argued the PCR court erred in granting PCR because the mutual combat charge did not prejudice Williams when self-defense was not his main argument and any burden shifting caused by the instruction did not prevent him from asserting his main defense, that of accident. The PCR court denied the State's motion.

ECF No. 17-12 at 2–6.

The Court of Appeals then applied the *Strickland* standard and concluded that "the PCR court erred by finding that trial counsel's deficient performance [for failing to object to the trial court's jury charge on mutual combat] prejudiced Williams." ECF No. 17-2 at 6. The Court of Appeals explained its holding as follows:

> We hold there is no reasonable probability the result of the trial would have been different had trial counsel objected to the trial court's mutual combat charge given the evidence presented. *See Jackson v. State*, 355 S.C. 568, 573, 586 S.E.2d 562, 565 (2003) (reversing the PCR court's grant of PCR, finding that although counsel was deficient for failing to request a self-defense charge, the instruction would not have affected the outcome of trial given the overwhelming evidence presented of Jackson's guilt). Williams testified he was served notice of a July 13, 2010 court hearing for an order of protection Kerns sought against him and for child support. He stated Kerns had told him she was afraid of him and had called the police because she said he was threatening her during an argument they had in May 2010. Booker recalled Williams leaving her and her aunt abruptly at a club in the early morning of July 10, 2010. On the recording of her 911 call, Kerns stated she believed Williams was on her front porch. Seconds later, a loud noise was heard and Kerns stopped responding to the 911 operator. Kerns was shot through the front window of her home. Taken together with Williams's testimony, the 911 call contradicted his version of events. Wilson and Son testified that Wilson was in Son's room when Williams entered Kerns's house and began shooting, contradicting Williams's testimony that Wilson approached him outside the house with a gun and that the shooting occurred while they fought. Williams also switched

> cars when he returned home, led police on a high-speed chase, and stabbed himself with a knife after an officer hit his car with a patrol car to force him to stop. Additionally, Officers found bullets of the same caliber as those used in the shooting in Williams's house in Laurens. Given the evidence presented during the trial, we hold there is no reasonable probability the outcome of the trial would have been different had the trial court not given the mutual combat charge. Accordingly, we reverse the PCR court's grant of PCR.

ECF No. 17-12 at 6–7.

**C. Analysis**

In his Amended Petition, Petitioner argues that the PCR Court "correctly found that Petitioner was prejudiced by trial counsel's deficient performance in failing to object" to the mutual combat charge "when no facts support such a charge" and the charge "negated [Petitioner's] self-defense and accident claim." ECF No. 15 at 5. In his Response to Respondent's Motion, Petitioner contends that the South Carolina Court of Appeals applied the wrong prejudice standard, "effectively conduct[ing] a sufficiency-of-the-evidence/harmless-error review instead of a Strickland prejudice analysis." ECF No. 24 at 4–5. He also argues that the Court of Appeals unreasonably rejected the PCR Court's factual findings and that the fact that the PCR Court and the appellate court "reach[ed] directly conflicting conclusions about prejudice on the same record" shows that a "fair-minded jurist could disagree," such that habeas should be granted in his favor. *Id.* at 5–6. Plaintiff makes similar arguments in his Motion for Summary Judgment. ECF No. 27 at 11–15 (arguing that the Court of Appeals "unreasonably disregarded the PCR Court's factual findings under 28 U.S.C. § 2254(d)(2)").

Upon review, the undersigned finds that the South Carolina Court of Appeals' denial of Petitioner's ineffective assistance claim based on the failure to object to the mutual combat charge was neither contrary to nor an unreasonable application of applicable Supreme Court precedent nor based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d); *Valentino*, 972 F.3d at 580 (noting the question is not whether a federal court considers the state court's

determination under the *Strickland* standard to be incorrect, but whether that determination was unreasonable). Contrary to Petitioner's argument, the Court of Appeals applied the *Strickland* standard, which is the applicable Supreme Court precedent. Moreover, the record fails to demonstrate that the Court of Appeals confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.

Petitioner has not shown that the Court of Appeals' determination under the *Strickland* standard was unreasonable. *Valentino*, 972 F.3d at 580. In applying prong two of the *Strickland* standard, the Court of Appeals found that, based on the evidence presented at trial, there was "no reasonable probability the outcome of the trial would have been different had the trial court not given the mutual combat charge," such that trial counsel's deficient performance did not prejudice Petitioner. ECF No. 17-12 at 6–7; *see Strickland*, 466 U.S. at 694 (explaining that to establish the second prong of the test, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). The Court of Appeals detailed the trial evidence upon which it based its finding, and the undersigned's review of the state court record confirms that the Court of Appeals' finding is supported by the trial record.

Petitioner's argument that the South Carolina Court of Appeals violated the *federal* habeas statute by reaching a different conclusion than the PCR Court is without merit, as 28 U.S.C. § 2254(d) does not govern state post-conviction review. *See* ECF No. 24 at 5–6; ECF No. 27 at 11–15. Additionally, Petitioner's contention that he is entitled to federal habeas relief because the fact that the PCR Court and the Court of Appeals "reach[ed] directly conflicting conclusions about prejudice on the same record" shows that a "fair-minded jurist could disagree" misapprehends the

standard. *See* ECF No. 24 at 5–6. Contrary to Petitioner's argument, the U.S. Supreme Court has made clear that federal relief may be granted only if *every* fairminded jurist would *agree* that counsel's performance was deficient *and* that the petitioner was prejudiced. *See Dunn*, 594 U.S. at 739–40; *Shinn*, 592 U.S. at 120; *see also Mays v. Hines*, 592 U.S. 385, 392 (2021) ("All that mattered was whether the [state] court, notwithstanding its substantial latitude to reasonably determine that a defendant has not shown prejudice, still managed to blunder so badly that every fairminded jurist would disagree." (citation and internal quotation marks omitted)); *Harrington*, 562 U.S. at 101 (explaining that a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision" (citing *Yarborough*, 541 U.S. at 664).

Upon consideration of the record and the filings before the Court, and mindful of the "doubly" deferential standard applied on habeas review, the undersigned finds that the South Carolina Court of Appeals' conclusion that Petitioner was not prejudiced by trial counsel's failure to object to the mutual combat charge is neither unreasonable nor based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d); *Harrison*, 890 F.2d at 678. Thus, Grounds One and Eight of the Amended Petition are without merit. Accordingly, the undersigned recommends that summary judgment be granted in favor of Respondent as to these grounds.

## II. GROUND TWO

Ground Two of the Amended Petition alleges that the "South Carolina Court of Appeals erred in finding Appellant was not prejudiced by trial court [sic] excluding as hearsay a threat made by the alleged victim while holding a gun on the Appellant." ECF No. 15 at 5. Petitioner asserts that the error was not harmless because "inability to tell the jury that the alleged victim [Wilson] threatened him was highly probative and prejudiced both the self-defense and voluntary

manslaughter jury charges." *Id.* at 5–6.

Respondent argues that Ground Two is non-cognizable for habeas review and should be summarily dismissed because the Court of Appeals' "resolution of the issue rested on state law, not federal law," such that "there is nothing to review here since federal courts will not review a disposition of an issue based only on adequate and independent state-law grounds." ECF No. 17 at 22 (citing *Glossip v. Oklahoma*, 604 U.S. 226, 242 (2025)). Upon review, the undersigned agrees with Respondent.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *see* 28 U.S.C. § 2254(a). In Ground Two, Petitioner presents a question of state evidentiary law and the admissibility of evidence, which are generally considered state law matters. *See Spencer v. Murray*, 5 F.3d 758, 762 (4th Cir. 1993) ("[A] claim about the admissibility of evidence under state law rarely is a claim upon which federal habeas corpus relief can be granted."). Absent a claim that the exclusion of evidence ran afoul of Petitioner's constitutional rights, this Ground is not cognizable in a federal habeas proceeding. *See Burket v. Angelone*, 208 F.3d 172, 186 (4th Cir. 2000) ("In federal habeas actions, we do not sit to review the admissibility of evidence under state law *unless* erroneous evidentiary rulings were *so extreme* as to result in a denial of a constitutionally fair proceeding." (emphasis added)); *see also Barbe v. McBride*, 521 F.3d 443, 452 (4th Cir. 2008) ("It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented." (citation omitted)).

As a general matter, Ground Two fails to assert a violation of the Constitution, laws, or treaties of the United States, such that it is not cognizable for federal habeas review. *See Estelle*,

502 U.S. at 67–68. Furthermore, Petitioner does not argue that this error was so extreme that it ran afoul of his constitutional right to due process. *See Burket*, 208 F.3d at 186. Indeed, the South Carolina Court of Appeals found that, to the extent the Trial Court erred in excluding the statement allegedly made by Wilson, such error was harmless because "it could not reasonably have affected the trial's outcome" as Petitioner's guilt had been "conclusively proven by competent evidence such that no other rational conclusion" could have been reached. *See* ECF No. 17-2 at 271. Accordingly, Petitioner has failed to show the Trial Court's error was "so extreme" that it implicated federal due process concerns. *See, e.g.*, *Burket*, 208 F.3d at 186 ("[E]ven if the Virginia Supreme Court's evidentiary ruling was erroneous, the ruling was not so extreme as to result in the denial of a constitutionally fair proceeding."); *Johnson v. Warden, Broad River Corr. Inst.*, No. CV 0:22-3210-CMC-PJG, 2023 WL 4349151, at *4 (D.S.C. May 4, 2023) (finding grounds that argued a trial court erred in admitting evidence raised a state evidentiary law issue—rather than an issue of federal law—and that the petitioner failed to show the alleged error violated federal law), *report and recommendation adopted,* No. CV 0:22-3210-CMC, 2023 WL 4196935 (D.S.C. June 27, 2023). As such, Ground Two does not present a basis upon which to grant habeas relief. Thus, the undersigned recommends that summary judgment be granted in favor of Respondent as to Ground Two.

## III. GROUND THREE

Ground Three of the Amended Petition alleges that the "PCR judge erred in refusing to find trial counsel[] ineffective for failing to preserve for appellate review the trial judge's failure to instruct the jury with the law of involuntary manslaughter." ECF No. 15 at 6.

Respondent argues that Petitioner cannot show an unreasonable application of *Strickland*, such that he cannot satisfy his burden under AEDPA review and Ground Three is without merit.

ECF No. 17 at 22–24. Upon review, the undersigned agrees with Respondent.

**A. The PCR Court's Decision**

Regarding Petitioner's claim that his trial attorneys were ineffective for failing to preserve for appellate review the Trial Court's failure to instruct the jury on involuntary manslaughter, the PCR Court[2] found as follows:

> Applicant argues that his defense attorneys were constitutionally ineffective for failing to preserve for appellate review their objection to the trial court's not instructing the jury on involuntary manslaughter. During the charge conference, Jones asked the trial court to charge the jury on involuntary manslaughter. Tran. 581. The trial court questioned whether the instruction would be warranted. Tran. 582. Later, the court informed the parties that it would not instruct the jury on involuntary manslaughter as the record was "void of any evidence supporting that instruction." Tran. 600-01. When asked if the defense took any exception to the court's decisions regarding jury instructions, Jones did not take any exception as to the involuntary manslaughter issue. Tran. 603. After the court charged the jury, excluding an instruction on involuntary manslaughter, Jones informed the court that it did not have any issues other than those it had already stated. Tran. 651. The Court of Appeals affirmed the convictions, finding Applicant's attorneys had not preserved the issue of the instruction on involuntary manslaughter for appellate review. . . .
>
> Involuntary manslaughter is "the unintentional killing of another without malice while engaged in (1) an unlawful activity not naturally tending to cause death or great bodily harm or (2) a lawful activity with reckless disregard for the safety of others." Sullivan v. State, 407 S.C. 241, 244, 754 S.E.2d 885, 887 (S.C. Ct. App. 2014) . . . . "Involuntary manslaughter requires a showing of criminal negligence, which 'is defined as the reckless disregard of the safety of others.'" State v. Scott, 414 S.C. 482, 487, 779 S.E.2d 529, 531 (2015) (citing S.C. Code Ann. § 16-3-60 (2003)). In Scott, the South Carolina Supreme Court affirmed the Court of Appeals' opinion in upholding the trial court's decision not to instruct the jury on involuntary manslaughter because the evidence did not support the instruction. Id. at 484, 779 S.E.2d at 530 . . . . Scott's explanation for the victim's death was that the victim pulled an object out of her pocket while they were engaged in a confrontation, that he performed a martial arts move on her that caused her elbow to be pushed up, and that the move caused her to stab herself in the throat. Id. at 485, 779 S.E.2d at 530. The Court found Scott did not present any evidence that he acted with reckless

[2] The South Carolina Court of Appeals denied Petitioner's Petition for Writ of Certiorari as to the issue raised in Ground Three, such that the PCR Court was the last state court to adjudicate the issue on the merits. *See Shinn*, 592 U.S. at 120 n.1 ("Section 2254 calls for review of the last state-court adjudication on the merits.").

> disregard for the safety of others. Id. at 488, 779 S.E.2d at 532.
>
> In this case, Applicant testified at trial that he performed a self-defense move when Wilson approached him outside the victim's home. According to Applicant, the gun discharged during that maneuver, and the fired bullet went through a window on the victim's house and struck her between her eyes. Applicant did not testify that he had his hands on the gun or that he and Wilson were struggling for control of the weapon when it discharged. Rather, his testimony was that the gun discharged in Wilson's hand when Applicant performed his self-defense move. Like the defendant in Scott, Applicant was not entitled to an instruction on involuntary manslaughter because his defensive move caused the weapon's bearer to use it to cause harm; in this case, according to Applicant's testimony, his move caused Wilson to fire the fatal shot at the victim. Additionally, Applicant's testimony would not support the instruction because he never claimed to have or to struggle for control of Wilson's gun. . . . Jones's testimony at the PCR hearing was that it was not clear from Applicant's testimony that he was claiming to have had control of the gun rather than Wilson having had control. Warder testified that he did not believe at the time of trial that Applicant's testimony provided evidence of recklessness as would be required to warrant a jury instruction on involuntary manslaughter. . . .
>
> This Court finds, even if the jury instruction on involuntary manslaughter were somehow warranted at trial, Applicant has not shown his conviction would have been reversed on appeal because any purported error was harmless. Applicant's explanation of the events at the victim's home was not credible in light of the evidence. The evidence at trial showed that the victim had sought an order of protection and that Applicant had recently been served with court papers indicating that he and the victim were due in the Family Court for a hearing a week after her death, that the victim had barricaded her front door with furniture out of fear of Applicant, that Applicant had attempted to call the victim multiple times on the night of her death, that Applicant abandoned his date at a nightclub in a hurried fashion at around 3:45 a.m. on the night of the murder, that he arrived at the victim's home at around 4:45 a.m. on the morning of the murder, that the victim told the 911 operator shortly before being shot through the eyes that she believed Applicant to be attempting to gain entry to her home, that Wilson identified Applicant as the shooter, and that the victim's young son identified Applicant as the shooter.
>
> This Court finds Applicant was not entitled to a Jury instruction on involuntary manslaughter and would not have prevailed on the issue, even if it had been preserved for appellate review. The instruction was not warranted based on the evidence at trial. This allegation is denied and dismissed with prejudice.

ECF No. 17-2 at 408–12.

**B. Analysis**

Petitioner argues that he should be granted habeas relief because the PCR Court failed to consider or credit Petitioner's testimony that "he and Wilson were 'struggling' and 'wrestling,' that they 'continued to fight as they moved through the house,' and that 'the gun was fired three times' during that struggle." ECF No. 24 at 7. He contends that this version of the facts "supplies the factual predicate for involuntary manslaughter," and he maintains that the jury should have been charged on involuntary manslaughter. *Id.* at 7–8.

Upon consideration of the record and the filings before the Court, and mindful of the "doubly" deferential standard applied on habeas review, the undersigned finds that the PCR Court's conclusion that Petitioner was not prejudiced by trial counsel's failure to preserve for appellate review the issue of the involuntary manslaughter is neither unreasonable nor based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d); *Valentino*, 972 F.3d at 580. The PCR Court expressly found that Petitioner's "explanation of the events at the victim's home was not credible in light of the evidence" presented at trial, such that "even if the jury instruction on involuntary manslaughter were somehow warranted at trial, [Petitioner] has not shown his conviction would have been reversed on appeal because any purported error was harmless." ECF No. 17-2 at 411. The PCR Court detailed the trial evidence upon which it based its finding, and the undersigned's review of the state court record confirms that the PCR Court's findings are supported by the trial record. Petitioner has not shown that the PCR Court's determination that Petitioner was not prejudiced by counsel's failure to preserve the issue was unreasonable. *Valentino*, 972 F.3d at 580. Accordingly, Ground Three of the Amended Petition is without merit, such that summary judgment in favor of Respondent is warranted.

## IV. GROUND FOUR

Ground Four of the Amended Petition alleges that the "PCR judge erred in refusing to find trial counsel[] ineffective for failing to request a jury instruction on transferred intent as it relates to self-defense when the judge instructed the jury on the law of self-defense and evidence was presented that while Petitioner was acting in self-defense during a struggle over a gun with one person, another person, Petitioner's wife, was fatally shot." ECF No. 15 at 6–7.

Respondent argues that Petitioner cannot show an unreasonable application of *Strickland*, such that he cannot satisfy his burden under AEDPA review as to Ground Four. ECF No. 17 at 25–26. Upon review, the undersigned agrees with Respondent.

### A. The PCR Court's Decision

Regarding Petitioner's claim that his trial attorneys were ineffective for failing to request a jury instruction on transferred intent, the PCR Court[3] found as follows:

> Applicant argues his attorneys were constitutionally ineffective for failing to request a jury instruction on the theory of "transferred self-defense". The South Carolina Supreme Court has noted that the theory of transferred self-defense is recognized in some jurisdictions outside of South Carolina, and that it "absolve[s] a defendant who injures an innocent third party while attempting to defend himself from bodily harm." State v. Porter, 269 S.C. 618, 622, 239 S.E.2d 641, 643 (1977).
>
> This Court finds Applicant has failed to establish his attorneys' performance was deficient according to the prevailing professional norms because he has not shown that they should have requested a jury instruction on transferred self-defense. When asked to recognize the theory in Porter, the Supreme Court declined to decide whether the theory is viable in the courts of South Carolina. Id. Our appellate courts have not recognized the theory since. Jones and Warder were acting reasonably under the prevailing professional norms when they did not request a jury instruction, the viability of which the Supreme Court declined to address almost four decades before Applicant's trial. Furthermore, the [South Carolina] Supreme Court has explained that it "has never required an attorney to anticipate or discover changes in the law, or facts which did not exist, at the time of the trial." . . . It is not

[3] The South Carolina Court of Appeals denied Petitioner's Petition for Writ of Certiorari as to the issue raised in Ground Four, such that the PCR Court was the last state court to adjudicate the issue on the merits. *See Shinn*, 592 U.S. at 120 n.1 ("Section 2254 calls for review of the last state-court adjudication on the merits.").

> a requirement of constitutional effectiveness that a defense attorney be the trailblazer in the courts' acceptance of a new legal theory, and Jones and Warder were not ineffective for not raising the issue with the trial court.
>
> This Court finds Applicant has failed to demonstrate any prejudice from his attorneys' not requesting the instruction. In light of the testimony from Applicant's date at trial about Applicant's post-killing behavior on the night of the murder, Wilson's testimony about Applicant's arrival at the victim's home and his shooting at him, and the victim's son's testimony about Applicant's attack on the victim and Wilson, as well as the testimony about Applicant's flight from police after the killing and his suicide attempt in stabbing himself in the chest, it is unlikely that the jury would have reached a different conclusion even had it received a jury instruction about transferred self defense because the evidence did not tend to support Applicant's version of events at the victim's home.
>
> This Court finds Applicant has failed to show Jones and Warder were constitutionally ineffective for failing to request that the trial court instruct the jury on the legal theory of transferred self-defense as he has not shown any deficiency in their performances with respect to this allegation and any resulting prejudice. As such, this allegation is denied and dismissed with prejudice.

ECF No. 17-2 at 422–24.

**B. Analysis**

Petitioner argues that the "fact that state law had not yet clearly adopted the [transferred-intent self-defense] doctrine does not excuse counsel's failure to request the instruction or preserve the issue." ECF No. 24 at 8. He further contends that "fair-minded jurists could disagree about whether counsel's performance was deficient and whether there is a reasonable probability that a properly instructed jury would have viewed the fatal shot differently," which "precludes summary judgment on Ground Four." *Id.*

Upon consideration of the record and the filings before the Court, and mindful of the "doubly" deferential standard applied on habeas review, the undersigned finds that the PCR Court's conclusion that trial counsel was not ineffective for failing to request a transferred-intent self-defense charge is neither unreasonable nor based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d); *Valentino*, 972 F.3d at 580. As an initial matter, the record fails to

demonstrate that the PCR Court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Moreover, the PCR Court applied the *Strickland* standard, which is the applicable Supreme Court precedent, and Petitioner has not shown that the PCR Court's determination under both prongs of the *Strickland* standard was unreasonable. *Valentino*, 972 F.3d at 580. Indeed, Petitioner's own arguments concede that the transferred-intent doctrine had not been adopted by state courts and that reasonable jurists could disagree as to whether both prongs of the *Strickland* standard had been satisfied. *See Harrington*, 562 U.S. at 101 (explaining that a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision" (citing *Yarborough*, 541 U.S. at 664)). Accordingly, Ground Four of the Amended Petition is without merit, and summary judgment in favor of Respondent is warranted.

## V. GROUND FIVE

Ground Five of the Amended Petition alleges that the "PCR judge erred in refusing to find trial counsel ineffective for failing to object when the judge instructed the jury that a specific intent to kill is not an element of attempted murder." ECF No. 15 at 7. Respondent argues that Petitioner cannot show an unreasonable application of *Strickland*, such that he cannot satisfy his burden under AEDPA review as to Ground Five. ECF No. 17 at 26–29. Upon review, the undersigned agrees with Respondent.

### A. The PCR Court's Decision

The PCR Court noted that Petitioner's trial counsel did not object to the following jury charge: "I instruct you that a specific intent to kill is not an element of attempted murder. But [t]here must be a general intent to commit serious bodily injury. Intent means intending the result

which, actually, occurs, not accidentally or involuntarily." ECF No. 17-2 at 416 (citing ECF No. 17-2 at 145). Regarding Petitioner's claim that his trial attorneys were ineffective for failing to object to the trial court's charge that specific intent was not required for attempted murder, the PCR Court[4] found as follows:

> The South Carolina Court of Appeals held in State v. King, 412 S.C. 403, 41 l, 772 S.E.2d 189, 193 (S.C. Ct. App. 2015), that the specific intent to commit murder is an element of attempted murder. The South Carolina Supreme Court later affirmed that holding. State v. King[,] 422 S.C. 47, 64, 810 S.E.2d 18, 27 (2017). In its discussion of the Court of Appeals' treatment of the issue, the Supreme Court agreed with the State that the Court of Appeals partly based its conclusion on dicta from State v. Sutton, 340 S.C. 393, 532 S.E.2d 283 (2000), acknowledging that South Carolina has been afflicted with "conflicting case law regarding levels of criminal intent . . . ," and noted the "ambiguity" created by the language in the attempted murder statute. King at 55-62, 810 S.E.2d at 22-26. A concurring opinion in King further emphasized the ambiguity of the attempted murder statute, stating that the question of whether attempted murder is a specific intent crime "is easily stated . . . but not easily answered." Id. at 71, 810 S.E.2d at 31 (Kittredge, J., concurring). [Footnote omitted].
>
> This Court finds that, due to the ambiguity of the language in the attempted murder statute, Applicant's defense attorneys were not acting outside the reasonable bounds of prevailing professional norms by not objecting to the jury instruction. At the PCR hearing, neither Jones nor Warder could remember their understanding of specific intent and attempted murder at the time of Applicant's trial; however, the difficulty in knowing the level of intent required in attempted murder cases before King is apparent from our appellate courts' decisions. The Court of Appeals' decision in King[,] which was published almost two years after the conclusion of Applicant's trial, recognized that the language of the attempted murder statute was ambiguous, and that it was necessary for the Court to resort to statutory interpretation and legislative history in order to determine whether specific intent was an element of attempted murder. Id. at 408-09, 772 S.E.2d at 191-91. The Supreme Court's decision in King, which was published almost four years after Applicant's trial, also makes it clear that the issue was confusing due to the interplay of common law offenses and statutory enactments. King clarified that the specific intent to kill is an element of attempted murder after the decision would have been of any guidance to Jones or Warder, and they should not be held to the standard of a clairvoyant. . . .

[4] The South Carolina Court of Appeals denied Petitioner's Petition for Writ of Certiorari as to the issue raised in Ground Five, such that the PCR Court was the last state court to adjudicate the issue on the merits. *See Shinn*, 592 U.S. at 120 n.1 ("Section 2254 calls for review of the last state-court adjudication on the merits.").

> This Court finds Applicant has failed to show there is a reasonable likelihood the jury's verdict as to Applicant's attempted murder of Wilson would have been different had Jones or Warder objected to the trial court's instruction regarding specific intent. Wilson testified at trial that Applicant entered the room belonging to the victim's children, in which Wilson was waiting with the children after Applicant entered the victim's home, and that the room was somewhat illuminated from the closet light. Tran. 294. Wilson testified Applicant shot at him three times and that he was struck by one of the bullets. Tran. 295. Wilson's testimony indicated the bullets may have mostly missed him due to his tripping over the children's video game console on the floor. Tran. 295. The shooter was close enough to Wilson that Wilson's face and clothing suffered powder burns and he smelled gunpowder. Tran. 295-96. Additionally, the jury heard testimony from Wilson and the victim's son regarding Applicant's killing of the victim, which included the son's testimony that Applicant trained his gun on him and fired, thwarted by a malfunction in the gun's firing mechanism or a depletion of ammunition.
>
> This Court finds Applicant has failed to demonstrate his attorneys were constitutionally ineffective for failing to object to the trial court's specific intent instruction because he has failed to show any deficiency in his attorney's performance and resulting prejudice. This allegation is denied and dismissed with prejudice.

ECF No. 17-2 at 416–19.

**B. Analysis**

Petitioner argues that even "if this Court accepts that deficient performance was not clearly established before King, the prejudice analysis cannot assume that the instruction given was lawful simply because the law was unsettled at the time" because "Strickland prejudice must be assessed against the correct legal standard." ECF No. 24 at 9. He contends that "[g]iven the chaotic circumstances of the shooting and the fact that Wilson survived, there is at least a reasonable probability that a jury correctly instructed on specific intent to kill would have reached a different verdict on the attempted murder charge," such that the PCR Court's "failure to analyze prejudice under the correct standard constitutes an unreasonable application of Strickland." *Id.*

Upon consideration of the record and the filings before the Court, and mindful of the "doubly" deferential standard applied on habeas review, the undersigned finds that Petitioner has

not met his burden under AEDPA. The record fails to demonstrate that the PCR Court confronted a set of facts that were materially indistinguishable from those considered in a decision of the U.S. Supreme Court but arrived at a result different from the Supreme Court precedent.

Moreover, the PCR Court applied the *Strickland* standard, which is the applicable Supreme Court precedent. As to the first prong, the PCR Court found that the issue of specific intent as an element of attempted murder was not well-settled as a matter of state law as of the time of Petitioner's trial, and that trial counsel were not acting outside the reasonable bound of prevailing professional norms by not objecting to the trial court's instruction that specific intent was not an element of attempted murder. Petitioner has not demonstrated that the prong one determination was unreasonable. As to prong two, the PCR Court detailed the evidence in the record supporting the PCR Court's finding that there was not a reasonable likelihood that the jury's verdict would have been different had trial counsel objected to the trial court's instruction regarding specific intent, and the undersigned's review of the state court record confirms that the PCR Court's findings are supported by the trial record. Petitioner has not shown that the PCR Court's determination of prong two of the *Strickland* standard was unreasonable. *Valentino*, 972 F.3d at 580.

Because Petitioner has not shown that the PCR Court's conclusion—that trial counsel was not ineffective for failing to object to the specific intent instruction—is neither unreasonable nor based on an unreasonable determination of the facts, Ground Five of the Amended Petition is without merit. *See* 28 U.S.C. § 2254(d); *Valentino*, 972 F.3d at 580. Accordingly, the undersigned recommends that summary judgment be granted in favor of Respondent as to Ground Five.

## VI. GROUND SIX

Ground Six of the Amended Petition alleges that the "PCR judge erred in refusing to find trial counsel ineffective for failing to object when in closing argument the prosecutor told the jury, 'On behalf of the people of Greenville County, please find him guilty.'" ECF No. 15 at 8. Petitioner contends that this statement "encouraged the jury to convict on an improper basis and lessened the burden on the State." *Id.*

Respondent argues that Petitioner cannot show an unreasonable application of *Strickland*, such that he cannot satisfy his burden under AEDPA review as to Ground Six. ECF No. 17 at 29–31. Upon review, the undersigned agrees with Respondent.

### A. The PCR Court's Decision

Regarding Petitioner's claim that his trial attorneys were ineffective for failing to object to the State's request to the jury during closing argument, the PCR Court[5] found as follows:

> The State ended its argument by explaining to the jury that Applicant enjoyed the presumption of innocence and was clad in "a robe of righteousness" that could only be removed if the jury removed the robe from Applicant after considering the evidence against him. Finally, the State said:
>
>> And after careful deliberation and without hesitation, you will remove that robe from him. And you'll come back in here and tell him that he's guilty. On behalf of the people of Greenville County, please, find him guilty.
>
> Tran. 630.
>
> Neither Jones nor Warder objected to the reference to the people of Greenville County, and both testified at the PCR hearing that they did not find the comment objectionable.
>
> The South Carolina Court of Appeals considered whether comments made by the State during closing argument denied a defendant the right to a fair trial in State v.

[5] The South Carolina Court of Appeals denied Petitioner's Petition for Writ of Certiorari as to the issue raised in Ground Six, such that the PCR Court was the last state court to adjudicate the issue on the merits. *See Shinn*, 592 U.S. at 120 n.1 ("Section 2254 calls for review of the last state-court adjudication on the merits.").

> Hamilton, 344 S.C. 344,543 S.E.2d 586 (S.C. Ct. App. 2001). . . . In Hamilton, the State argued the defendant took the stand and admitted his guilt after going through a jury trial when he could have pleaded guilty at the start of the week and also said, "[L]adies and gentlemen, you put me here as a representative of your system of justice, a representative of your community, and I wouldn't bring in to you a borderline case." Id. at 359-60, 543 S.E.2d at 594-95. The Court found the comments "highly inappropriate and constitutionally impermissible." Id. at 362, 543 S.E.2d at 596. . . . The Court of Appeals went on to find that, though the comments were not permissible, they did not so infect the trial with unfairness that Hamilton's due process rights were violated. Id. at 365, 543 S.E.2d at 596. The South Carolina Supreme Court recently affirmed that this is the proper test for judging whether a defendant's due process rights were violated by comments made by the State during closing argument. Fortune v. State, Op. No. 27932 (S.C. Sup. Ct. filed Dec. 4, 2019) (Shearouse Adv. Sh. No. 47 at 6, 9) (citations omitted) (finding the State's closing argument was improper when the State commented that the solicitor's job is to tell the truth but the job of defense attorneys is to "manipulate the truth" and "do whatever they have to - without regard for the truth - to get a not guilty verdict.").
>
> The State's reference to the people of Greenville County in this case was not impermissible. In contrast with Hamilton, the solicitor did not make derogatory references during Applicant's trial to Applicant's right to a trial before the jury, did not identify himself as a representative of the jury's members by virtue of his position as a solicitor, and did not personally vouch for the strengths of the State's case against Applicant. The State's comment in closing was no more objectionable than the solicitor's informing the jury at the beginning of jury qualification that she worked as an assistant solicitor for the Thirteenth Circuit Solicitor's Office or Warder's note that he and Jones were appearing before the jury on behalf of Applicant. Tran. 10-12. The jury was aware that the purpose of the trial concerned allegations that Applicant had committed crimes within the jurisdiction of Greenville County from the trial court's reading to them of the indictments. Tran. 8-10. The trial court also informed the jury pool that its members were pulled from Greenville County, which was part of the Thirteenth Judicial Circuit. Tran. 8. The State's comment did not ask the jury to inject arbitrary factors in its deliberations, particularly when the State's references to the presumption of innocence and its burden of proving Applicant's guilt beyond a reasonable doubt are taken into consideration.
>
> This Court finds Applicant has failed to demonstrate his attorneys were constitutionally ineffective for failing to object to the State's reference to the people of Greenville during closing argument because he has failed to show any deficiency in his attorney's performance and resulting prejudice. This allegation is denied and dismissed with prejudice.

ECF No. 17-2 at 418–21.

**B. Analysis**

Petitioner argues that when closing arguments "urge conviction as a civic duty rather than as the product of reasoned assessment of the evidence, they raise due process concerns," and that the Solicitor improperly invited jurors to convict based on their role as community representatives rather than on the evidence. ECF No. 24 at 9–10. Plaintiff contends that his trial counsel's failure to object deprived him of an opportunity to have the error cured or preserved and that, "[a]t a minimum, reasonable jurists could disagree about whether the omission was constitutionally significant, precluding summary judgment." *Id.* at 10.

Upon consideration of the record and the filings before the Court, and mindful of the "doubly" deferential standard applied on habeas review, the undersigned finds that the PCR Court did not apply federal law unreasonably or base his adjudication on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d); *Valentino*, 972 F.3d at 580. First, the record fails to demonstrate that the PCR Court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.

Moreover, the PCR Court applied the *Strickland* standard, which is the applicable Supreme Court precedent, and Petitioner has not shown that the PCR Court's determination under both prongs of the *Strickland* standard was unreasonable. *Valentino*, 972 F.3d at 580. Regarding the prejudice prong, the PCR Court found that the solicitor's comment did not amount to a denial of due process because the comment "did not ask the jury to inject arbitrary factors in its deliberations." ECF No. 17-2 at 420–21. In reaching this determination, the PCR Court took into consideration other statements made by the State during closing argument, including "the State's references to the presumption of innocence and its burden of proving [Petitioner's] guilt beyond a

reasonable doubt." *Id.* Upon consideration of the closing arguments and the trial record as a whole, the undersigned concludes that the PCR Court was not unreasonable in finding that the solicitor's comments at issue did not so infect the trial with unfairness as to amount to a denial of due process, such that Petitioner failed to establish prejudice. *See Humphries v. State*, 570 S.E.2d 160, 166 (S.C. 2002) ("Improper comments do not automatically require reversal if they are not prejudicial to the defendant, and the appellant has the burden of proving he did not receive a fair trial because of the alleged improper argument. The relevant question is whether the solicitor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." (internal citation omitted)). Accordingly, the undersigned finds that the PCR Court's conclusion—that trial counsel was not ineffective for failing to object to the solicitor's comment—is neither unreasonable nor based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d); *Valentino*, 972 F.3d at 580. Accordingly, Ground Six of the Amended Petition is without merit, such that summary judgment in favor of Respondent is warranted.

## VII. GROUND SEVEN

Ground Seven of the Amended Petition alleges that the "PCR judge erred in refusing to find trial counsel[] ineffective for not objecting to the judge's instruction to the jury that the provocation needed for voluntary manslaughter must come from some act of or related to the victim, precluding a defense theory of transferred intent as to voluntary manslaughter." ECF No. 15 at 9. Petitioner contends that the jury charge "was not proper as the provocation may legally come from . . . Wilson who was shot at by [Petitioner] when he accidentally hit his wife." *Id.*

Respondent argues that Petitioner cannot show an unreasonable application of *Strickland*, such that he cannot satisfy his burden under AEDPA review as to Ground Four. ECF No. 17 at 31–33. Upon review, the undersigned agrees with Respondent.

**A. The PCR Court's Decision**

Regarding Petitioner's claim that his trial attorneys were ineffective for failing to object to the jury instruction on provocation in voluntary manslaughter, the PCR Court[6] found as follows:

> Applicant argues that his defense attorneys were constitutionally ineffective for failing to object to the trial court's jury instruction, while charging the jury on voluntary manslaughter as the lesser-included offense of murder, that "[t]he provocation needed for voluntary manslaughter must come from some act of or related to the victim." Tran. 657. Applicant maintains that the instruction was not properly given as provocation may have come from Wilson, whom Applicant alleges was approaching Applicant with a gun in a threatening manner, such that the jury may have convicted Applicant of the voluntary manslaughter of the victim rather than of her murder.
>
> In State v. Wharton, 381 S.C. 209,215,672 S.E.2d 786, 788-89 (2009), the South Carolina Supreme Court vacated the portion of the Court of Appeals' decision that addressed the question of whether the doctrine of transferred intent was applicable in voluntary manslaughter cases. The Supreme Court found the Court of Appeals had improperly relied upon State v. Childers, 373 S.C. 267,645 S.E.2d 233 (2007), in which a plurality of the Supreme Court held that transferred intent does not apply to voluntary manslaughter, because Childers was not a majority opinion, the applicability of the doctrine remains unsettled in South Carolina, and the issue was not properly before the Wharton court as there was no evidence that a thirty party had given Wharton sufficient legal provocation. Id. Even without the statement from Childers that transferred intent is not recognized, authority at the time of Applicant's trial would have reasonably given notice to defense attorneys that provocation must come from the victim in a case of voluntary manslaughter. Harris v. State, 354 S.C. 382, 387, 581 S.E.2d 154, 156 (2003) ("Sufficient provocation necessary to justify a manslaughter charge must come from the victim and not be transferred from a third-party to the victim.") (emphasis in original) (citations omitted); State v. Franklin, 310 S.C. 122,125,425 S.E.2d 758, 760 (S.C. Ct. App. 1992) ("The provocation of the deceased must be such as naturally and instantly produces in the mind of a person ordinarily constituted the highest degree of exasperation, rage, anger, sudden resentment, or terror, rendering the mind incapable of cool reflection.") (citation omitted), overruled on other grounds by State v. Burdette, 427 S.C. 490, 832 S.E.2d 575 (2019).
>
> This Court finds neither Jones nor Warder exhibited deficient performance by failing to object to the trial court's jury instruction that provocation must come from the victim or in requesting that the court instruct the jury on the doctrine of

[6] The South Carolina Court of Appeals denied Petitioner's Petition for Writ of Certiorari as to the issue raised in Ground Seven, such that the PCR Court was the last state court to adjudicate the issue on the merits. *See Shinn*, 592 U.S. at 120 n.1 ("Section 2254 calls for review of the last state-court adjudication on the merits.").

> transferred intent in the context of voluntary manslaughter. Our appellate courts have not answered the question of whether the doctrine is recognized in South Carolina, and there is therefore no legal authority in this State regarding the doctrine. In recognizing the uncertainty surrounding a legal issue that was unsettled at the time of Applicant's trial and is unsettled now, this Court finds the attorneys were not ineffective. Cf. State v. Starnes, 388 S.C. 590, 597-98, 598 S.E.2d 604, 608 (2010) (recognizing that "[t]rial courts often struggle with the difficult interplay between murder and the lesser included offense of voluntary manslaughter ... " and affirming the trial court's refusal to give a jury instruction on voluntary manslaughter). Jones and Warder should not be held to the standard of a clairvoyant, seeing the answer to the question on transferred intent when the question remains unanswered to this day. See Thornes v. State, 310 S.C. 306, 309-10, 426 S.E.2d 764, 765-66 (1993) (explaining that the Supreme Court "has never required an attorney to anticipate or discover changes in the law, or facts which did not exist, at the time of the trial.").
>
> This Court finds Applicant has failed to demonstrate that there is a reasonable likelihood the outcome of trial court have been different had Jones and Warder objected to the trial court's instruction that provocation in voluntary manslaughter must come from the victim. Applicant's explanation as to Wilson's approaching him in a threatening manner with a weapon outside victim's home was not credible. As previously noted in this order, the evidence at trial showed that victim had sought an order of protection and that Applicant had recently been served with court papers indicating that he and the victim were due in the Family Court for a hearing a week after her death; that the victim had barricaded her front door with furniture out of fear of Applicant; that Applicant had attempted to call the victim multiple times on the night of her death; that Applicant abandoned his date at a nightclub in a hurried fashion at around 3:45 a.m. on the night of the murder; that he arrived at the victim's home at around 4:45 a.m. on the morning of the murder; that the victim told the 911 operator shortly before being shot through the eyes that she believed Applicant to be attempting to gain entry to her home; that Wilson identified Applicant as the shooter, and; that the victim's young son identified Applicant as the shooter. In light of all of this, Applicant has failed to show a reasonable likelihood that the jury's decision to find Applicant guilty of the victim's murder rather than convicting him of the lesser-included offense of voluntary manslaughter would have been different had the trial court given the provocation instruction Applicant believes he should have received.
>
> This Court finds Applicant has failed to show his attorneys were constitutionally ineffective for failing to object to the jury instruction or in failing to request an instruction based on the doctrine of transferred intent in the context of voluntary manslaughter as he has shown no deficiency in their performance in this regard nor any resulting prejudice. This allegation is therefore denied and dismissed with prejudice.

ECF No. 17-2 at 412–14.

**B. Analysis**

Petitioner argues that by instructing the jury "that provocation 'must come from' the victim, the [trial] court affirmatively misinstructed on [a] settled element of voluntary manslaughter and removed the most significant provocation from the jury's purview." ECF No. 24 at 10. Petitioner contends that his counsel "had a duty to object to an instruction that distorted the jury's analytical framework on the only meaningful partial-defense theory available," and that the state the PCR Court's "failure to recognize th[e] distinction between unsettled transferred-intent doctrine and the clear misstatement of provocation law was both an unreasonable factual determination and an unreasonable application of Strickland." *Id.* at 11.

Upon consideration of the record and the filings before the Court, and mindful of the "doubly" deferential standard applied on habeas review, the undersigned finds that the PCR Court's conclusion—that trial counsel was not ineffective for failing to object to the trial court's charge on provocation—is neither unreasonable nor based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d); *Valentino*, 972 F.3d at 580. As an initial matter, the record fails to demonstrate that the PCR Court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Moreover, the PCR Court applied the *Strickland* standard, which is the applicable Supreme Court precedent. As to prong one, the PCR Court found that because the issue of transferred intent as it relates to voluntary manslaughter was unsettled under state law as of the time of Petitioner's trial, trial counsel did not exhibit "deficient performance by failing to object to the trial court's jury instruction that provocation must come from the victim or in requesting that the court instruct the jury on the doctrine of transferred intent in the context of voluntary manslaughter." ECF No. 217-2 at 413. As to prong two, the PCR Court found that Petitioner's

"explanation as to Wilson's approaching him in a threatening manner with a weapon outside victim's home was not credible" and found that Petitioner had not demonstrated a reasonable likelihood that the outcome of his trial would have been different if counsel had objected. *Id.* at 414 (detailing trial evidence supporting PCR Court's finding). Petitioner has not shown that the PCR Court's determination under both prongs of the *Strickland* standard was unreasonable. *Valentino*, 972 F.3d at 580. Accordingly, Ground Seven of the Amended Petition is without merit, such that summary judgment in favor of Respondent is warranted.

## VIII. GROUND NINE

Respondent argues that Petitioner's Ground Nine—that trial counsel was constitutionally ineffective for failing to object to the jury listening to the 911 tape during deliberations in the jury room—is procedurally barred because it "was never raised in any prior proceeding and could have been raised in his PCR actions." ECF No. 17 at 34–36. Respondent also argues that even if it were not procedurally barred, Ground Nine "lacks merit because Petitioner cannot reasonably demonstrate any prejudice from this alleged error by trial counsel." *Id.*

In response, Petitioner does not dispute that he failed to raise this issue before any state court, but he argues that this federal court should excuse the default because his PCR Counsel was ineffective in failing to raise this issue before the PCR Court. ECF No. 24 at 11–12 (citing *Martinez v. Ryan*, 566 U.S. 1 (2012)). He further argues that but for trial counsel's failure to object to the replay of the 911 call during jury deliberations, "there is a reasonable likelihood that at least one juror would have credited [Petitioner's] self-defense or accident theory." ECF No. 27 at 16 (Plaintiff's Motion for Summary Judgment).

Generally, PCR counsel's errors do not qualify as cause to excuse a procedural default. *See Owens v. Stirling*, 967 F.3d 396, 422 (4th Cir. 2020). However, "when state law requires 'claims

of ineffective assistance of trial counsel [to] be raised in an initial-review collateral proceeding' and not on direct review—which South Carolina law does—procedural default does not bar federal habeas review of 'a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" *Sigmon v. Stirling*, 956 F.3d 183, 198 (4th Cir. 2020) (quoting *Martinez v. Ryan*, 566 U.S. 1, 17 (2012)), *as amended* (Apr. 15, 2020). Accordingly, to invoke *Martinez* and obtain federal habeas review of his procedurally defaulted claim, Petitioner must show his PCR Counsel was ineffective or absent, and he "must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one"—that is, that the claim has "some merit." *Martinez*, 566 U.S. at 14.

Upon review of the parties' filings and the record in this case, the undersigned finds that Ground Nine is procedurally barred and that Petitioner has not demonstrated either cause and prejudice or that the failure to consider this Ground Nine would result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750; *Lawrence*, 517 F.3d at 714. The undersigned is not persuaded by Petitioner's argument that his claim of ineffective assistance of trial counsel based on the 911 call has "some merit" or that PCR Counsel was ineffective for failing to raise this claim. Moreover, even assuming that Petitioner can establish a basis under *Martinez* to excuse the procedural default of this claim, the undersigned agrees with Respondent that Petitioner has failed to establish the merits of Ground Nine because he cannot satisfy *Strickland*'s prejudice prong. *See* ECF No. 17 at 35.

Both the South Carolina Court of Appeals and the PCR Court detailed the extensive evidence of Petitioner's guilt presented during the trial that undermined Petitioner's self-defense and accident theories, and the PCR Court repeatedly found that Petitioner's version of the facts was not credible. See ECF No. 17-12 at 6–7 ("Given the evidence presented during the trial, we

hold there is no reasonable probability the outcome of the trial would have been different had the trial court not given the mutual combat charge." (Court of Appeals)); ECF No. 17-2 at 411 ("Applicant's explanation of the events at the victim's home was not credible in light of the evidence." (PCR Court)); *Id.* at 414 ("Applicant's explanation as to Wilson's approaching him in a threatening manner with a weapon outside victim's home was not credible. . . . In light of all of [the evidence at trial], Applicant has failed to show a reasonable likelihood that the jury's decision to find Applicant guilty of the victim's murder rather than . . . voluntary manslaughter would have been different had the trial court given the provocation instruction[.]"). Notably, the 911 call was played in open court during trial, ECF No. 17-1 at 82, but Petitioner's Ground Nine claim is based only on the replay of the call during jury deliberations. In light of the foregoing and the trial record, the undersigned finds that Petitioner has failed to show a reasonable probability that the outcome of trial would have been different had his trial counsel objected to the replay of the 911 call during jury deliberations. *Strickland*, 466 U.S. at 694; *see Pinholster*, 563 U.S. at 189 (explaining that a reasonable probability "requires a 'substantial,' not just 'conceivable,' likelihood of a different result").

For the foregoing reasons, the undersigned recommends that summary judgment be granted in favor of Respondent as to Ground Nine.

## CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Respondent's Motion for Summary Judgment (ECF No. 18) be **GRANTED**, that Petitioner's Motion for Summary Judgment (ECF No. 27) be **DENIED**, and that the Amended Petition (ECF No. 15) be **DISMISSED with prejudice.**

July 28, 2026
Charleston, South Carolina

Molly H. Cherry
United States Magistrate Judge

**The parties are directed to the next page for their rights to file objections to this recommendation.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).