IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Willie Marvin Williams,<br><br>Petitioner,<br><br>v.<br><br>Jonathan Nance, Warden,<br><br>Respondent. | C/A No. 9:25-cv-12987-SAL<br><br><br>**ORDER** |

Willie Marvin Williams ("Petitioner"), a pro se prisoner, filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254. Jonathan Nance ("Respondent"), the warden at the facility where Petitioner is incarcerated, moved for summary judgment. [ECF No. 18.] Petitioner also filed a motion for summary judgment. [ECF No. 27.] Respondent filed a response in opposition, ECF No. 28, and Petitioner filed a reply. ECF No. 29. This matter is before the court for review of the Report and Recommendation ("Report") made by United States Magistrate Judge Molly H. Cherry in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.). [ECF No. 31.] In the Report, the magistrate judge recommends granting Respondent's motion for summary judgment, ECF No. 18; denying Petitioner's motion for summary judgment, ECF No. 27; and denying the petition. Petitioner objects to the Report. [ECF No. 36.]

## BACKGROUND

The Report sets forth a more detailed history of Petitioner's case, which the court adopts. But the court begins with reciting the facts of Petitioner's crimes as detailed by the state appellate court and then reviewing the state court's procedural history.

## I. Facts of Petitioner's Crimes

As stated by the South Carolina Court of Appeals,

> Williams was accused of murdering his wife, Natasha Kerns, attempting to murder Kerns's boyfriend, Anthony Wilson, and unlawful conduct towards Kerns's son (Son).
>
> Kerns called 911 from her cell phone on July 10, 2010, at about 4:50 a.m. On the recording of the 911 call, Kerns told the operator that she believed someone was outside her home because she heard noises and her dogs barking. She stated she and Williams were divorcing and that an order of protection was in progress. She stated she had a pistol for her own protection. She then told the 911 operator that the person outside was Williams and that he was on her front porch. After a loud noise could be heard on the recording, Kerns stopped responding to the 911 operator.
>
> During the trial, Son testified that on the night of Kerns's death he knew something was wrong when he "heard the first fire." He testified that Wilson was in his room when this occurred. Son recalled that he saw Williams's Chrysler outside his window. Son testified he crawled into the hallway because he heard gunfire and saw Williams standing over Kerns's body shooting her. Son stated he saw Williams leave in his car.
>
> Wilson testified he met Kerns at a night club in Charlotte. He recalled that on July 9, 2010, he visited Kerns in Greenville and spent time with her, Son, and her daughter (Daughter). Wilson stated he woke up after going to sleep in Kerns's house because he heard the dog barking and "some ruckus going on around outside the house." He testified that Kerns got out of bed, grabbed a gun from the floor under her bed, and ran towards the front of the house. Wilson stated he took Daughter to Son's room. He remembered hearing Kerns saying "something about get away from my property, get away from my house, and stuff like that." Wilson stated he heard banging outside and Kerns talking before it went "straight silent." He testified he put Daughter on the bed with Son and then saw "a silhouette of a human being coming down the hallway." He stated the person he saw was a man he had never seen before. Wilson testified the man looked in Kerns's room, then walked down the hallway and shot into Son's room three times, hitting Wilson with the first shot. Wilson testified he was unconscious for an unknown amount of time and woke up to Son shaking him. He stated that when he left Son's room, he found Kerns dead by the window in the front room of the house and that before he could leave the house the police arrived.
>
> Cynthia Booker, who was Williams's girlfriend in July 2010, testified that she, her aunt, and Williams went to a club on the night of July 9, 2010. Booker stated that Williams left her and her aunt at the club around 3:45 a.m. on July 10, 2010. She

testified that Williams left in a hurry and she and her aunt had to find another ride home.

Williams testified he called Kerns around 4:15 or 4:30 a.m. on July 10, 2010, but she did not answer. He stated he then drove to Kerns's house, where he saw a vehicle that he did not recognize. Williams testified he attempted to open the storm door of the house but found it was locked. He testified he knocked on the front door of the house for three to five minutes but received no answer. He recalled that when he turned to walk away from the door he saw a curtain move, so he tried to "peep in through the window." Williams testified he then heard a noise behind him and turned to see a man, whom he identified as Wilson, approaching him with a gun pointed at him. He demonstrated how he acted in self-defense to the jury. He stated the gun went off while the men were struggling with each other. Williams testified that they continued "wrestling" and fell through the window into the home. He recalled the other man "got away from" him and may have lost the gun temporarily before retrieving it. Williams stated he and the man continued to fight as they moved through the house, during which the gun was fired three times and the man fell to the ground. He testified he did not see Daughter or Son in the bedrooms. He stated he then found Kerns in the front room with no pulse and he began to have an "anxiety attack." Williams testified he saw that Kerns had called 911, "flipped out," and left the home.

Williams testified he went home, paced around his yard, and then got back in the Chrysler. He stated that when he saw the Chrysler's gas light was on, he decided to drive his Chevrolet Tahoe instead. Williams recalled that he drove towards Laurens, stopped at the church where his mother was buried, and went to find Son and Daughter. Williams stated he stopped and spoke to a friend of his, Tracy Irby, and told him he had "messed up" because if he had not gone to Kerns's house he "wouldn't have got into the altercation and things." Williams testified he had decided to return to his house when he passed a Laurens County Sheriff's officer's car that began to follow him. He stated he continued to drive through Laurens with the officer following him and that the police had blocked various roads to stop him. Williams recalled that he had turned into a parking lot to avoid police when the officer's car hit the back of the Tahoe. He testified that he took a knife out of the Tahoe's glove compartment and stabbed himself in the chest because he was suicidal.

The parties stipulated that a properly administered and stored gunshot residue test was performed on Wilson and showed he had gunshot residue on his right palm, the back of his right hand, his left palm, and the back of his left hand. The parties further stipulated that a handprint found on a 1995 Lexus parked behind Kerns's home was identified as Wilson's handprint.

James William Armstrong, who worked in the forensics division crime laboratory for the Greenville County Department of Public Safety, testified that gunshot residue could get on a person's hands "from actual contact with an area that may

> have gunshot residue on it, being in close proximity of a firearm when it's being fired, or even handling firearms." Armstrong also testified that the bullet from Kerns's autopsy, the bullet recovered from the wall of Son's room, and bullets taken by police from Williams's home in Laurens pursuant to a search warrant were all .38 caliber bullets.

*Williams v. State*, No. 2020-000796, 2025 WL 713147, at *1–*2 (S.C. Ct. App. Mar. 5, 2025).

## II. Procedural History

In April 2013, a Greenville County grand jury indicted Petitioner for murder, possession of a weapon during the commission of a violent crime, attempted murder, and unlawful conduct towards a child. In May 2013, Petitioner went to trial before a jury and the Honorable Deadra L. Jefferson, Circuit Court Judge. Petitioner was represented by Richard H. Warder and W. Townes Jones, IV ("trial counsel"). Assistant Solicitor Judith M. Munson represented the State. The jury found Petitioner guilty as charged, and the trial court sentenced him to life imprisonment for murder, thirty years' imprisonment for attempted murder, ten years' imprisonment for unlawful conduct towards a child, and five years' imprisonment, suspended to time served, for possession of a weapon during the commission of a violent crime.

Petitioner appealed, raising the following issues:

1. In a case where both voluntary manslaughter and self-defense were charged to the jury, did the trial court err by excluding as hearsay a threat made by the alleged victim while holding a gun on the appellant?

2. Did the trial court err by failing to charge involuntary manslaughter because appellant testified that the gun went off during a struggle with one of the alleged victims?

[ECF No. 17-2 at 193–212.] The South Carolina Court of Appeals affirmed Petitioner's conviction in an unpublished opinion, finding no error in the exclusion of the alleged threat and that the

involuntary manslaughter charge issue was unpreserved for appellate review. *See State v. Williams*, No. 2013-001152, 2016 WL 2944076 (S.C. Ct. App. May 18, 2016).

In December 2016, Petitioner filed a pro se post-conviction relief ("PCR") application, which was later merged with a second application filed through counsel in October 2017. Following an evidentiary hearing in December 2019, where Petitioner was represented by C. Rauch Wise, a state court granted the PCR application, finding trial counsel were constitutionally ineffective for failing to object to the jury instruction on mutual combat when no evidence was presented at trial supporting that instruction. The court denied and dismissed with prejudice all other claims made by Petitioner. *See* ECF No. 17-2 at 400–24.

Both the State and Petitioner appealed the order of dismissal. The State raised the following issues:

1. Did the PCR court err in finding [Petitioner's] defense attorneys were constitutionally ineffective for not objecting to the trial court's jury instruction on mutual combat when the PCR court's finding that [Petitioner] suffered prejudice was erroneously based on the assumption that [Petitioner] was entitled to a self-defense instruction and when the PCR court's findings as to this issue contradict its other findings?

2. Did the PCR court err in not restricting its grant of post-conviction relief to the murder conviction only when that is the offense tried that could have been affected by the mutual combat instruction, and, in the alternative, from refusing to clarify which convictions the grant of relief was meant to apply?

[ECF No. 17-4 at 3.] And Petitioner raised the following issues:

1. Did the PCR judge err in refusing to find trial counsel ineffective for failing to request a jury instruction on transferred intent as it relates to self-defense when the judge instructed the jury on the law of self-defense and evidence was presented that while Petitioner was acting in self-defense during a struggle over a gun with one person, another person, Petitioner's wife, was fatally shot?

2. Did the PCR judge err in refusing to find trial counsel ineffective for failing to preserve for appellate review the trial judge's failure to instruct the jury with the law of involuntary manslaughter?

3. Did the PCR judge err in refusing to find trial counsel ineffective for failing to object when the judge instructed the jury that a specific intent to kill is not an element of attempted murder?

4. Did the PCR judge err in refusing to find trial counsel ineffective for failing to object when in closing argument the prosecutor told the jury, "On behalf of the people of Greenville County, please find him guilty."?

5. Did the PCR judge err in refusing to find trial counsel ineffective for not objecting to the judge's instruction to the jury that the provocation needed for voluntary manslaughter must come from some act of or related to the victim, precluding a defense theory of transferred intent as to voluntary manslaughter?

[ECF No. 17-5 at 3.]

The case was transferred to the South Carolina Court of Appeals, which granted the State's petition and denied Petitioner's. [ECF No. 17-9.] After receiving briefing, the court reversed the PCR court's decision, concluding that trial counsel's failure to object to the mutual combat charge did not result in prejudice. *Williams v. State*, 2025 WL 713147, at *4. Petitioner then petitioned for writ of certiorari with the South Carolina Supreme Court, which denied the petition. [ECF No. 17-19.] The remittitur was issued in September 2025.

Petitioner initiated this action in October 2025 by filing a writ of habeas corpus pursuant to 28 U.S.C. § 2254. And, with leave of the court, he filed an amended petition in December 2025, raising the following grounds:

**Ground One:** The South Carolina Court of Appeals erred in reversing the PCR Court's grant of relief by finding no prejudice resulting from trial counsel's failure to object to the unwarranted mutual combat charge that prevented the jury from considering both self-defense and accident and the State's evidence was not overwhelming.

**Ground Two:** The South Carolina Court of Appeals erred in finding Appellant was not prejudiced by trial court [sic] excluding as hearsay a threat made by the alleged victim while holding a gun on the Appellant.

**Ground Three:** Did the PCR judge erred [sic] in refusing to find trial counsel's ineffective [sic] for failing to preserve for appellate review the trial

judge's failure to instruct the jury with the law of involuntary manslaughter.

**Ground Four:** Did the PCR judge erred [sic] in refusing to find trial counsel's ineffective [sic] for failing to request a jury instruction on transferred intent as it relates to self-defense when the judge instructed the jury on the law of self-defense and evidence was presented that while Petitioner was acting in self-defense during a struggle over a gun with one person, another person, Petitioner's wife, was fatally shot.

**Ground Five:** The PCR judge erred in refusing to find trial counsel ineffective for failing to object when the judge instructed the jury that a specific intent to kill is not an element of attempted murder.

**Ground Six:** The PCR judge erred in refusing to find trial counsel ineffective for failing to object when in closing argument the prosecutor told the jury, "On behalf of the people of Greenville County, please find him guilty."

**Ground Seven:** The PCR judge erred in refusing to find trial counsel's ineffective [sic] for not objecting to the judge's instruction to the jury that the provocation needed for voluntary manslaughter must come from some act of or related to the victim, precluding a defense theory of transferred intent as to voluntary manslaughter.

**Ground Eight:** Trial counselor's [sic] was constitutional ineffective [sic] for failing to object to the trial court's erroneous jury instruction on self-defense.

**Ground Nine:** Trial counselor's [sic] was constitutional ineffective [sic] for failing to object to the jury listening to the 911 tape during deliberations in the jury room.

[ECF No. 15 at 5–13.] Both Petitioner and Respondent filed motions for summary judgment, ECF Nos. 18, 27, which are fully briefed. [ECF Nos. 18, 24, 27, 28, 29.]

On July 6, 2026, the magistrate judge issued the Report that is the subject of this order, recommending the court grant Respondent's motion and deny Petitioner's motion. [ECF No. 31.] After receiving an extension, Petitioner filed objections to the Report on September 14, 2026.

[ECF No. 36.] Respondent replied on September 21, 2026. [ECF No. 37.] Thus, the matter is now ripe for consideration by the court.

## LEGAL STANDARDS

### I. Review of a Magistrate Judge's Report

The magistrate judge makes only a recommendation to the court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). In response to a recommendation, any party may file written objections. *See Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3)). The district court then reviews de novo only the portions of the Report to which a party has specifically objected. *Id.* An objection is sufficiently specific if it reasonably alerts the court to a party's true objection to the Report. *Id.* at 460 (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). If instead a litigant objects only generally, the court reviews the Report for clear error and need not provide an explanation for adopting the recommendation. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).

An objection is specific so long as it alerts the district court that the litigant believes the magistrate judge erred in recommending dismissal of that claim. *Elijah*, 66 F.4th at 460. Objections need not be novel to be sufficiently specific. *Id.* Thus, "[i]n the absence of specific objections . . . this court is not required to give any explanation for adopting the recommendation." *Field v. McMaster*, 663 F. Supp. 2d 449, 451–52 (D.S.C. 2009) (emphasis in original).

Because Petitioner is proceeding pro se, the court is charged with liberally construing the pleadings to allow him to fully develop potentially meritorious claims. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). That said, the requirement of liberal

construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs*., 901 F.2d 387, 390–91 (4th Cir. 1990).

## II. Review of a Motion for Summary Judgment

Summary judgment is appropriate if a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of proving he is entitled to summary judgment by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To avoid summary judgment, the nonmoving party must then show that a material fact is genuinely disputed. In determining whether a genuine issue of material fact exists, the court must draw all justifiable inferences in favor of the nonmoving party. *See HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. Review of a Petition for Writ of Habeas Corpus

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a court cannot grant an application for a writ of habeas corpus with respect to any claim adjudicated on the merits in a state court proceeding unless the decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The AEDPA standard of review is "highly deferential" to the state court. *Davis v. Ayala*, 576 U.S. 257, 269 (2015). To obtain relief, "a state prisoner must show that the state court's ruling on the claim presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Moreover, the state court's factual findings are presumed to be correct, and the petitioner must rebut that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## IV. Ineffective Assistance of Counsel

This petition presents claims of ineffective assistance of counsel in violation of the Sixth Amendment. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). To state a claim for ineffective assistance of counsel, Petitioner must show (1) his trial counsel was deficient and (2) the deficient performance prejudiced his defense. *Id.* at 687. To satisfy the first prong, Petitioner must prove that counsel "made errors so serious" that his representation "fell below an objective standard of reasonableness[.]" *Id.* at 687–88. As to the second prong, Petitioner must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Harrington*, 562 U.S. at 112).

On habeas review, a claim for ineffective assistance of counsel—"a deferential analysis in its own right—must be viewed through the deferential lens of Section 2254(d)." *Thompson v. Gansler*, 734 F. App'x 846, 853 (4th Cir. 2018); *see also Harrington*, 562 U.S. at 105 (deeming

the standards "doubly" deferential "in tandem"). The question for a federal habeas court "is not whether counsel's actions were reasonable" but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. Thus, while "[s]urmounting *Strickland*'s high bar is never an easy task[,]" proving that "a state's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105 (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)). The court must "give[] both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013).

**DISCUSSION**

Having reviewed the record, the briefs of the parties, and the Report, the court finds the magistrate judge accurately recited the applicable standards for review under § 2254 and correctly applied those standards. The magistrate judge recommends that the court grant Respondent's motion for summary judgment and deny Petitioner's motion for summary judgment. [ECF No. 31.] The court agrees with the magistrate judge's reasoning and adopts the Report in full. Petitioner objects, and the court addresses those objections below.

**I. Abandoned Grounds**

In his objections, Petitioner expressly abandons Grounds Two, Four, Five, Six, Seven, and Nine. [ECF No. 36 at 1.] Having reviewed the Report's recommendations as to those grounds for clear error and finding none, the court adopts the Report as to Grounds Two, Four, Five, Six, Seven, and Nine and grants Respondent's motion for summary judgment on these grounds.

**II. Grounds One and Eight**

Petitioner's first and eighth grounds allege the same error: the South Carolina Court of Appeals unreasonably determined that Petitioner suffered no prejudice from trial counsel's failure to object to the unwarranted mutual combat charge. *See* ECF No. 15 at 5, 10; *see also* ECF No. 24

at 3 (Petitioner agreeing that Grounds One and Eight raise the same claim). As noted above, Petitioner successfully argued this ground to the PCR court, but the South Carolina Court of Appeals reversed. *See* ECF No. 17-2 at 415; *Williams*, 2025 WL 713147, at *4.

According to Petitioner, the PCR court correctly decided the issue. As explained in the Report, however, the South Carolina Court of Appeals' decision was not based on an unreasonable determination of the facts and did not involve an unreasonable application of federal law. *See* ECF No. 31 at 23–25. Because Petitioner failed to satisfy the requirements of § 2254, the magistrate judge recommends granting summary judgment in Respondent's favor. *Id.* at 25. Petitioner objects. His objections fall into two categories—that the appellate court's decision was based on an unreasonable determination of the facts and that the state appellate court unreasonably applied federal law. *See* ECF No. 36 at 2–13. The court takes these objections in turn.

**A. Factual Determinations**

Petitioner objects to the magistrate judge's conclusion that the South Carolina Court of Appeals' no-prejudice determination was supported by the trial record and based on a reasonable determination of facts. *See* ECF No. 36 at 4–5, 7–8, 10, 12. Specifically, Petitioner argues that the trial record contains clear and convincing evidence supporting his claim of self-defense. If there was evidence that supported his self-defense claim, then he argues there is also a reasonable probability that the outcome would have been different absent the mutual combat charge. *See id.*

In making its determination, the South Carolina Court of Appeals thoroughly reviewed the evidence presented at Petitioner's trial,[1] including the recording of Kerns's 911 call, the stipulated evidence regarding Wilson's handprint and the presence of gunshot residue on his hands, and the

[1] A full excerpt of that evidence is quoted earlier in this order. *See supra* pp. 2–4. The excerpt provides a comprehensive recitation of the evidence.

testimony of Petitioner, Wilson, and Kerns's son. *See Williams*, 2025 WL 713147, at *1–*2, *4. After reviewing the facts, the court of appeals turned to Petitioner's claim of ineffective assistance of counsel. The PCR court had ruled in Petitioner's favor on both *Strickland* prongs, finding that (1) trial counsel were deficient by not objecting to the mutual combat charge, and (2) Petitioner was prejudiced because the instruction negated the self-defense charge. The court of appeals did not address whether counsel's performance was deficient but instead concluded that, given the evidence presented at trial, the outcome would not have been different even without the mutual combat charge. The court explained,

> We hold the PCR court erred by finding that trial counsel's deficient performance prejudiced Williams. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 694–96 (1984) (holding that to establish a claim for ineffective assistance of counsel, a PCR applicant must show (1) counsel's performance was deficient because it fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different); *id.* at 700 ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."). We hold there is no reasonable probability the result of the trial would have been different had trial counsel objected to the trial court's mutual combat charge given the evidence presented. *See Jackson v. State*, 355 S.C. 568, 573, 586 S.E.2d 562, 565 (2003) (reversing the PCR court's grant of PCR, finding that although counsel was deficient for failing to request a self-defense charge, the instruction would not have affected the outcome of trial given the overwhelming evidence presented of Jackson's guilt). Williams testified he was served notice of a July 13, 2010 court hearing for an order of protection Kerns sought against him and for child support. He stated Kerns had told him she was afraid of him and had called the police because she said he was threatening her during an argument they had in May 2010. Booker recalled Williams leaving her and her aunt abruptly at a club in the early morning of July 10, 2010. On the recording of her 911 call, Kerns stated she believed Williams was on her front porch. Seconds later, a loud noise was heard and Kerns stopped responding to the 911 operator. Kerns was shot through the front window of her home. Taken together with Williams's testimony, the 911 call contradicted his version of events. Wilson and Son testified that Wilson was in Son's room when Williams entered Kerns's house and began shooting, contradicting Williams's testimony that Wilson approached him outside the house with a gun and that the shooting occurred while they fought. Williams also switched cars when he returned home, led police on a high-speed chase, and stabbed himself with a knife after an officer hit his car with a patrol car to force him to stop. Additionally, Officers found bullets of the same caliber as those used in the

> shooting in Williams's house in Laurens. Given the evidence presented during the trial, we hold there is no reasonable probability the outcome of the trial would have been different had the trial court not given the mutual combat charge. Accordingly, we reverse the PCR court's grant of PCR.

*Williams*, 2025 WL 713147, at *4.

Petitioner argues that this finding was based on an unreasonable determination of the facts. According to him, the trial record contains clear and convincing evidence corroborating his account that Wilson approached him with a gun and that the shootings occurred while he defended himself. *See* ECF No. 36 at 7–8, 10, 12. In support, Petitioner points to inconsistencies between Wilson's and Kerns's son's testimony regarding the location of Kerns's daughter in the home, Wilson's handprint on a vehicle behind the house, and the presence of gunshot residue on Wilson's hands.[2] *See* ECF No. 36 at 7–8, 10, 16–17.

The court of appeals, however, found Petitioner's version of events not credible given other evidence—including Kerns's 911 call and testimony that Wilson was in Kerns's son's room when Petitioner entered the house and started shooting. *See Williams*, 2025 WL 713147, at *4. Under § 2254(e)(1), the court begins with the presumption that the state court's factual findings are correct. *See* 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct."). A petitioner bears the burden of rebutting the presumption by clear and convincing evidence. *See id.* Petitioner has not met that burden here. The evidence Petitioner

[2] Petitioner also appears to raise a new factual claim that Wilson used Kerns's firearm and that the forensics examiner's testimony supports this theory. *See* ECF No. 36 at 8, 17. But Petitioner did not testify that Wilson used Kerns's firearm or present any direct evidence establishing that fact during the state-court proceedings. Review under § 2254(d)(1) "is limited to the record that was before the state that adjudicated the claims on the merits." *Pinholster*, 563 U.S. at 181. In any event, even if the court treats Petitioner's assertion as an inference drawn from the existing state-court record, the record directly contradicts that theory, as the forensic examiner expressly testified that the recovered projectiles were not fired from Kerns's gun. [ECF No. 17-1 at 420.]

identifies does not establish that the state court's factual findings were incorrect, much less rebut those findings by clear and convincing evidence.

For instance, although Wilson testified that he brought Kerns's daughter to her son's room prior to the shooting, and Kerns's son testified she remained in Kerns's room, the conflicting testimony does not establish that Wilson confronted Petitioner outside with a gun. *See* ECF No. 17-1 at 105, 294–95. Likewise, Wilson's handprint establishes only that he touched the vehicle. It does not establish when he touched it or that he was outside the home before the shooting. Finally, although gunshot residue was found on Wilson's hands, the forensic examiner explained that such residue can result from firing or handling a firearm, being near a firearm when it is discharged, or contacting a surface containing gunshot residue. [ECF No. 17-1 at 414.] Because Wilson was shot at close range, *see id*. at 298, the presence of residue on his hands does not establish that he fired a weapon during the incident. None of these pieces of evidence serve as clear and convincing evidence that the court of appeals' recitation of the facts is incorrect. Accordingly, Petitioner's objections are overruled.

**B. Burden-Shifting**

The court turns next to Petitioner's argument that the court of appeals' decision was contrary to, or resulted from an unreasonable application of, Supreme Court precedent. *See* ECF No. 36 at 2–3, 6, 9, 11–13.

Petitioner argues that the court of appeals unreasonably applied clearly established federal law in finding no prejudice. Specifically, he argues that the mutual combat charge impermissibly shifted his burden of proof in violation of due process principles established in *Mullaney v. Wilbur*, 421 U.S. 684 (1975). *See* ECF No. 36 at 3, 9, 11, 13.

The court of appeals did not apply *Mullaney* in its opinion. Instead, because the claim was one of ineffective assistance of counsel, the court applied *Strickland* and concluded that "there [was] no reasonable probability the outcome of the trial would have been different had the trial court not given the mutual combat charge." *Williams*, 2025 WL 713147, at *4. That was not an unreasonable application of federal law. The second prong of *Strickland* requires the court to consider whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Thus, even assuming counsel performed deficiently by failing to object to the mutual combat charge, the court of appeals reasonably concluded that Petitioner could not establish the requisite prejudice. Petitioner has therefore not met his burden of demonstrating the state court unreasonably applied federal law.

Nor has Petitioner established that the court of appeals' decision is contrary to *Mullaney*. In *Mullaney*, the Supreme Court held that requiring a defendant to prove that he acted in the heat of passion upon sudden provocation in order to reduce a murder charge to manslaughter violated due process because it relieved the state of its burden of proving every element necessary to establish the greater offense, including malice. *See* 421 U.S. at 703–04. The Supreme Court subsequently clarified, however, that due process permits placing the burden of proving an affirmative defense on a defendant. *Patterson v. New York*, 432 U.S. 197, 201–06, 210 (1977). Applying that distinction, the Supreme Court in *Martin v. Ohio*, upheld a requirement that a defendant prove self-defense by a preponderance of the evidence. *See* 480 U.S. 228, 235–36 (1987). Accordingly, even to the extent the mutual combat charge shifted the burden to Petitioner to prove self-defense, the charge was not necessarily contrary to clearly established law as

determined by the Supreme Court.[3] Moreover, for purposes of Petitioner's ineffective-assistance claim, the court of appeals concluded that, given the evidence contradicting Petitioner's version of events, there was no reasonable probability that the outcome of trial would have been different had the mutual combat charge not been given.[4]

Accordingly, Petitioner is not entitled to relief on this argument. The court overrules his objections and grants Respondent's motion for summary judgment on Grounds One and Eight.

**III. Ground Three**

In Ground Three, Petitioner argues that trial counsel were ineffective for failing to preserve for appellate review the trial court's failure to instruct the jury on involuntary manslaughter. *See* ECF No. 15 at 6. Petitioner raised this issue in his PCR action, and the PCR court denied relief, finding that any error by trial counsel did not result in prejudice. [ECF No. 17-2 at 408–12.] The Report concluded that the PCR court's decision was neither contrary to nor an unreasonable

---

[3] South Carolina requires the state to disprove self-defense beyond a reasonable doubt once the issue is properly raised. *State v. Burkhart*, 565 S.E.2d 298, 303 (2002). But the state-law allocation of that burden does not itself establish a basis for federal habeas relief under § 2254. The question before this court is whether the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

[4] If the court broadly construes Petitioner's objections as asserting a freestanding due-process claim based on the alleged burden-shifting effect of the mutual combat charge, that claim is not properly before the court. The Petitioner did not raise such a claim in his amended habeas petition and asserted it for the first time in his objections. *See* ECF Nos. 15, 36; *see also Wells v. Wallace*, C/A No.: 2:19-1284-JFA, 2019 WL 5617935, at *5 (D.S.C. Oct. 31, 2019) ("Habeas petitioners cannot assert new claims for the first time in response to summary judgment motions." (citing *Neumon v. Cartledge*, No. 8:14-cv-2556-RMG, 2015 WL 4607732, at *9 (D.S.C. July 31, 2015))); *see also Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) ("By considering, and then granting relief based on, a different factual ground than that originally presented in Folkes' § 2254 petition, the district court considered a claim that Folkes did not raise. In so doing, it permitted Folkes to circumvent AEDPA's framework for how federal courts are to review § 2254 claims raised by state prisoners.").

application of clearly established federal law and was not based on an unreasonable determination of the facts. [ECF No. 31 at 30.]

Petitioner objects, arguing that the PCR court's prejudice finding was objectively unreasonable because the trial evidence supported an involuntary-manslaughter instruction. *See* ECF No. 36 at 14–16. Again, he relies on conflicting testimony from Wilson and Kerns's son regarding the daughter's location arguing that the testimony corroborated his account that Kerns's death was unintentional and resulted from an accidental discharge of Wilson's firearm while Petitioner and Wilson struggled outside the home. *See id.* at 16–17. The PCR court considered Petitioner's testimony, explaining:

> Involuntary manslaughter is "the unintentional killing of another without malice while engaged in (1) an unlawful activity not naturally tending to cause death or great bodily harm or (2) a lawful activity with reckless disregard for the safety of others." *Sullivan v. State*, 407 S.C. 241, 244, 754 S.E.2d 885, 887 (S.C. Ct. App. 2014) . . . . "Involuntary manslaughter requires a showing of criminal negligence, which 'is defined as the reckless disregard of the safety of others.'" *State v. Scott*, 414 S.C. 482, 487, 779 S.E.2d 529, 531 (2015) (citing S.C. Code Ann. § 16-3-60 (2003)). In *Scott*, the South Carolina Supreme Court affirmed the Court of Appeals' opinion in upholding the trial court's decision not to instruct the jury on involuntary manslaughter because the evidence did not support the instruction. *Id*. at 484, 779 S.E.2d at 530 . . . . Scott's explanation for the victim's death was that the victim pulled an object out of her pocket while they were engaged in a confrontation, that he performed a martial arts move on her that caused her elbow to be pushed up, and that the move caused her to stab herself in the throat. *Id*. at 485, 779 S.E.2d at 530. The Court found Scott did not present any evidence that he acted with reckless disregard for the safety of others. *Id*. at 488, 779 S.E.2d at 532.
>
> In this case, Applicant testified at trial that he performed a self-defense move when Wilson approached him outside the victim's home. According to Applicant, the gun discharged during that maneuver, and the fired bullet went through a window on the victim's house and struck her between her eyes. Applicant did not testify that he had his hands on the gun or that he and Wilson were struggling for control of the weapon when it discharged. Rather, his testimony was that the gun discharged in Wilson's hand when Applicant performed his self-defense move. Like the defendant in Scott, Applicant was not entitled to an instruction on involuntary manslaughter because his defensive move caused the weapon's bearer to use it to cause harm; in this case, according to Applicant's testimony, his move caused Wilson to fire the fatal shot at the victim. Additionally, Applicant's testimony

> would not support the instruction because he never claimed to have or to struggle for control of Wilson's gun. . . . Jones's testimony at the PCR hearing was that it was not clear from Applicant's testimony that he was claiming to have had control of the gun rather than Wilson having had control. Warder testified that he did not believe at the time of trial that Applicant's testimony provided evidence of recklessness as would be required to warrant a jury instruction on involuntary manslaughter. . . .
>
> This Court finds, even if the jury instruction on involuntary manslaughter were somehow warranted at trial, Applicant has not shown his conviction would have been reversed on appeal because any purported error was harmless. Applicant's explanation of the events at the victim's home was not credible in light of the evidence. The evidence at trial showed that the victim had sought an order of protection and that Applicant had recently been served with court papers indicating that he and the victim were due in the Family Court for a hearing a week after her death, that the victim had barricaded her front door with furniture out of fear of Applicant, that Applicant had attempted to call the victim multiple times on the night of her death, that Applicant abandoned his date at a nightclub in a hurried fashion at around 3:45 a.m. on the night of the murder, that he arrived at the victim's home at around 4:45 a.m. on the morning of the murder, that the victim told the 911 operator shortly before being shot through the eyes that she believed Applicant to be attempting to gain entry to her home, that Wilson identified Applicant as the shooter, and that the victim's young son identified Applicant as the shooter.
>
> This Court finds Applicant was not entitled to a Jury instruction on involuntary manslaughter and would not have prevailed on the issue, even if it had been preserved for appellate review. The instruction was not warranted based on the evidence at trial. This allegation is denied and dismissed with prejudice.

[ECF No. 17-2 at 409–12.]

Petitioner has failed to rebut the PCR court's factual findings by clear and convincing evidence or to show that the PCR court's decision was based on an unreasonable determination of the facts. The PCR court found Petitioner's account that the gun discharged while he and Wilson fought to be not credible. That factual finding is entitled to deference. 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). The conflicting testimony regarding the daughter's location does not rebut the presumption of correctness. Moreover, the PCR court determined that Petitioner was not entitled

to the involuntary manslaughter charge even accepting his version of the facts. This court does not have the authority on habeas review to reconsider the state court's interpretation of South Carolina law governing when such an instruction is warranted. *See Sharpe v. Bell*, 593 F.3d 372, 383 (4th Cir. 2010) ("It is beyond the mandate of federal habeas courts [ ] to correct the interpretation by state courts of a state's own laws."). Thus, the question is not whether this court would reach the same conclusion under South Carolina law, but whether the state court's adjudication of Petitioner's federal claim of ineffective assistance of counsel was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. Petitioner has not made that showing. In particular, the PCR court concluded that, even assuming an instruction was warranted, Petitioner could not establish that the omission prejudiced him because the evidence supporting his account was not credible and the purported instructional error would have been harmless on appeal. Petitioner has not demonstrated that this application of *Strickland* was objectively unreasonable. Accordingly, Petitioner's objections are overruled.[5] Because Petitioner has not satisfied his burden under § 2254, Respondent is entitled to summary judgment on Ground Three.

**CONCLUSION**

After a de novo review of each part of the Report to which Petitioner specifically objected, the court hereby adopts the Report and Recommendation, ECF No. 31, as set forth above.

[5] Petitioner also objects to the Report's purported determination that he did not dispute Respondent's factual and procedural history. *See* ECF No. 36 at 4–5. The magistrate judge, however, merely observed that Petitioner did not dispute the procedural history provided by Respondent. The Report did not state that Petitioner accepted Respondent's characterization of the underlying facts. *See* ECF No. 31 at 2. Accordingly, this objection rests on a misunderstanding of the Report. Moreover, as discussed above, Petitioner's objections to the factual record considered by the PCR court and the South Carolina Court of Appeals are without merit. This objection is therefore overruled.

Respondent's motion for summary judgment, ECF No. 18, is granted, Petitioner's motion for summary judgment, ECF No. 27, is denied, and the amended petition, ECF No. 15, is dismissed with prejudice.

It is further ordered that a certificate of appealability is denied because Petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).[6]

**IT IS SO ORDERED.**

September 25, 2026
Columbia, South Carolina

Sherri A. Lydon
United States District Judge

[6] A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find both that his constitutional claims are debatable and that any dispositive procedural rulings by the district court are also debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this matter, the court finds that Petitioner has failed to make "a substantial showing of the denial of a constitutional right."